30 P.3d 1278 (2001)
144 Wash.2d 753
STATE of Washington, Petitioner,
v.
Kenneth L. DEMERY, Respondent.
No. 69693-4.
Supreme Court of Washington, En Banc.
Argued February 27, 2001.
Decided September 13, 2001.
*1280 Gerald Horne, Pierce County Prosecutor, Michael Sommerfeld, Deputy County Prosecutor, Barbara L. Corey-Boulet, Deputy County Prosecutor, for Petitioner.
Department of Assigned Counsel, Dino G. Sepe, Patricia Anne Pethick, Tacoma, for Respondent.
*1279 OWENS, J.
In this appeal, we must decide whether statements made by police officers during a taped interview accusing the suspect of lying constitute impermissible opinion testimony. The police commonly use this interview technique to determine whether a defendant will change her story during an interview. The defendant was charged with one count of robbery and three counts of kidnapping. The trial court denied the defendant's motion to redact the officers' statements on grounds that the statements were necessary to provide context to the defendant's responses. The Court of Appeals reversed, concluding that the officers' statements in the tape constituted impermissible opinion testimony regarding the veracity of the defendant. Because we conclude that such statements are not opinion testimony, we reverse the decision of the Court of Appeals and affirm the defendant's conviction.

FACTS
On May 4, 1998, Thomas Kelly and his two children were waiting at a bus stop in Lakewood when the defendant approached them. The defendant, Kenneth Demery, confronted Kelly and demanded that Kelly repay money that he had previously borrowed and that he pay an additional $1,000 as interest. When Demery brandished a gun, Kelly gave him two $50 bills and suggested that they should go to a bank so that Kelly could withdraw additional money. Kelly was afraid that Demery would harm his children, so he planned to contact security at the bank in order to defuse the situation.
Demery accompanied Kelly and his children to the Key Bank at the Lakewood Mall. Kelly suggested that Demery should leave his gun outside, so Demery placed the gun by a recycling bin in an alley near the bank. While Demery remained in the lobby with the children, Kelly approached a teller and informed her that he had been brought into the bank at gunpoint and that the person with the gun had demanded money from him. The bank alerted mall security, and when the guard arrived at the bank, he approached Demery and asked him to wait outside. The police were also summoned to the scene.
After the officers arrived at the bank, one officer told Demery to remain on the premises while he investigated the situation. However, when Kelly and the other officer went to retrieve the gun from the recycling bin, Demery ran away from the officers. The officers gave chase, and Demery was arrested. The officers recovered both the gun and the two $50 bills that Kelly had given to Demery.
After he was taken to the police station, Demery agreed to give a taped statement to Detective Rick Adamson. Detective Adamson read Miranda[1] warnings to Demery on the tape, and Detective Adamson and Detective Sergeant Andy Estes questioned him regarding the events leading up to his arrest. During the course of the interview, the detectives made statements suggesting that Demery was lying.[2] These statements were not *1281 redacted when the tape and a transcript were admitted during the defendant's trial.
Demery was charged with one count of first degree robbery and three counts of first degree kidnapping. In addition, a weapons enhancement was added to each charge. Prior to trial, the court held a CrR 3.5 hearing and determined that the defendant's statements made in the taped interview were voluntary and that the tape was admissible at trial. At trial, the judge, over objection, admitted the tape without redacting the statements made by the officers that suggested that Demery was lying during the interview. The trial court concluded that the officers' statements provided context for Demery's statements and that the statements were part of a commonly used police interview technique.
The tape was played before the jury during Detective Adamson's direct testimony. During cross-examination, Detective Adamson was questioned regarding his statement in the taped interview that the gun would have Demery's fingerprints on it. The detective admitted that he did not actually know at that time whether Demery's fingerprints were in fact on the gun.[3] In addition, Adamson stated that he had made this representation regarding the fingerprints to see if Demery would change his story. Finally, the detective explained that police lie to suspects as part of a commonly used interview tactic that is designed to see whether a suspect will change her story during the course of an interview.
Demery was convicted of first degree robbery and of one count of first degree kidnapping; however, Demery was acquitted of the charges of kidnapping in relation to the children. Demery appealed, contending that the trial court erred in denying his motion to redact the officers' statements from the tape. The Court of Appeals agreed that the trial court erred in admitting the unredacted tapes on grounds that the officers' statements constituted impermissible opinion testimony regarding the veracity of the defendant. The Court of Appeals concluded that the error was not harmless, so the court reversed the trial court's decision and remanded the case. The State of Washington sought review, which this Court granted.

ISSUE
Do statements made by police officers in a taped interview accusing the defendant of lying constitute impermissible opinion testimony regarding the veracity of the defendant when such statements are played before the jury during trial?

ANALYSIS
The trial court has wide discretion to determine the admissibility of evidence, and the trial court's decision whether to admit or exclude evidence will not be reversed on appeal unless the appellant can establish that the trial court abused its discretion. See State v. Rivers, 129 Wash.2d 697, 709-10, 921 P.2d 495 (1996). A trial court abuses its discretion only if no reasonable person would adopt the view espoused by the trial court. State v. Sutherland, 3 Wash.App. 20, 21, 472 P.2d 584 (1970). Where reasonable persons could take differing views regarding the propriety of the trial court's actions, the trial court has not abused its discretion. Id. at 22, 472 P.2d 584.
The State contends that the trial court did not abuse its discretion when the trial court admitted the police officers' statements asserting that the defendant was lying during the taped interview. Specifically, the State argues that the statements did not constitute impermissible opinion testimony regarding the credibility of a witness; rather, the State argues that these statements were made as part of a commonly used police interview technique to determine whether a suspect will change her story. Furthermore, the State emphasizes that the statements made by the police officers were necessary to give *1282 context to the responses offered by the defendant.
Generally, no witness may offer testimony in the form of an opinion regarding the guilt or veracity of the defendant; such testimony is unfairly prejudicial to the defendant "because it `invad[es] the exclusive province of the [jury].'" City of Seattle v. Heatley, 70 Wash.App. 573, 577, 854 P.2d 658 (1993) (citing State v. Black, 109 Wash.2d 336, 348, 745 P.2d 12 (1987)); see also ER 608 cmt. (noting that "[t]he drafters of the Washington rule felt that impeachment by use of opinion is too prejudicial and on a practical level is not easily subject to testing by cross examination or contradiction"). In determining whether statements are in fact impermissible opinion testimony, the court will generally consider the circumstances of the case, including the following factors:
(1) "the type of witness involved,"
(2) "the specific nature of the testimony,"
(3) "the nature of the charges,"
(4) "the type of defense, and"
(5) "the other evidence before the trier of fact."
Heatley, 70 Wash.App. at 579, 854 P.2d 658. Admitting impermissible opinion testimony regarding the defendant's guilt may be reversible error because admitting such evidence "violates [the defendant's] constitutional right to a jury trial, including the independent determination of the facts by the jury." State v. Carlin, 40 Wash.App. 698, 701, 700 P.2d 323 (1985), overruled on other grounds by City of Seattle v. Heatley, 70 Wash.App. 573, 854 P.2d 658 (1993); see also Dubria v. Smith, 224 F.3d 995, 1001-02 (9th Cir.2000) (suggesting that the admission of taped interviews containing police statements challenging the defendant's veracity may also violate the defendant's right to due process), cert. denied, 531 U.S. 1148, 121 S.Ct. 1089, 148 L.Ed.2d 963 (2001).
One major issue involved in this case is whether statements made by police officers during a taped interview fall within the purview of "opinion testimony." "Testimony" refers to evidence that is given at trial while the "witness" is under oath. BLACK'S LAW DICTIONARY 1485 (7th ed.1999). Similarly, a "witness" is a person who provides evidence under oath or affirmation. Id. at 1596, 121 S.Ct. 1089. Moreover, "opinion testimony" can be defined as "[t]estimony based on one's belief or idea rather than on direct knowledge of facts at issue." Id. at 1486, 121 S.Ct. 1089.
In contrast, the officers' statements were not offered during live testimony at trial. Rather, the officers' statements in the taped interview were part of a commonly used police interview technique, designed to see whether a defendant will change her story during the course of an interrogation. Because the officers' statements were not made under oath at trial,[4] we conclude that they do not fall within the definition of opinion testimony for purposes of the evidentiary prohibition. This position is consistent with other cases in which we "ha[ve] expressly declined to take an expansive view of claims that testimony constitutes an opinion of guilt." Heatley, 70 Wash.App. at 579, 854 P.2d 658; see also State v. Lopez, 95 Wash.App. 842, 856-57, 980 P.2d 224 (1999) (noting that the defendant's out of court statements regarding *1283 the veracity of his children were not "testimony" and suggesting that the statements were not subject to the evidentiary prohibition).
In Warren v. Hart, 71 Wash.2d 512, 514, 429 P.2d 873 (1967), we noted that evidence regarding the issuance or nonissuance of a citation by a police officer would be inadmissible as opinion evidence. We concluded that such evidence would constitute indirect opinion evidence, subject to the evidentiary prohibition. See Warren, 71 Wash.2d at 514, 429 P.2d 873; see also Kostelecky v. NL Acme Tool/NL Indus., Inc., 837 F.2d 828, 830-31 (8th Cir.1988) (asserting that an accident report, which contained a statement that the accident had been caused by the defendant's conduct, should not have been admitted into evidence because it constituted impermissible opinion evidence). However, the police statements in this case do not constitute even indirect opinion evidence. Unlike accident reports and police citations that are designed to record the author's spur-of-the-moment assessment of the situation, we note that the officers' statements in this case were solely designed to see whether the defendant would change his story during the interview.
Another relevant consideration in this case is the purpose for which the "evidence" was offered at trial. Unlike statements offered by a witness during trial to impeach the defendant's credibility, the officers' statements in this case were admitted solely to provide context for the responses offered by the defendant.[5] When the trial court was considering the motion to redact the officers' statements, the prosecutor argued that the defendant's inadequate responses to many statements made by the police were admissible to impeach the defendant's credibility. The trial court concluded that the defendant had made voluntary responses to the officers' statements and that the defendant's responses were relevant. In addition, the trial court concluded that the officers' statements were not hearsay and that they were necessary to provide context to the defendant's responses. We note, however, that when the trial court admits third party statements to provide context to a defendant's responses, the trial court should give a limiting instruction to the jury, explaining that only the defendant's responses, and not the third party's statements, should be considered as evidence. Such a limiting instruction was not required in this case because the jury clearly understood from the officer's testimony that the statements were offered solely to provide context to the defendant's relevant responses.
As we have recognized, it is the function of the jury to assess the credibility of a witness and the reasonableness of the witness's responses. See State v. Whelchel, 115 Wash.2d 708, 724, 801 P.2d 948 (1990). Because the trial court concluded that the responses made by the defendant were relevant in regard to the defendant's credibility as a witness, we conclude that the jury was entitled to assess the reasonableness of the defendant's responses to the officers' assertions that he was lying.
Other jurisdictions have considered whether an officer's statement during an interview that the suspect was lying should be excluded. For example, the Superior Court of Pennsylvania concluded that an officer's statements that the suspect was lying during a videotaped interview were properly redacted because such statements are analogous to the prosecutor making statements during trial that she thought that the defendant was guilty or untruthful. Commonwealth v. Kitchen, 1999 PA Super. 100, 730 A.2d 513, 521. However, the Kitchen court failed to explain why police statements made during an interview were the same as statements made by a prosecutor during trial.[6]
*1284 The Carlin court noted that when a law enforcement officer gives opinion testimony, the jury is especially likely to be influenced by that testimony. Carlin, 40 Wash.App. at 703, 700 P.2d 323. An officer's testimony offered during trial may resemble a prosecutor's statements made during trial only in that both the officer and the prosecutor represent the State; nevertheless, an officer's statement made during a taped interview is essentially different from a prosecutor's statement made during trial. An officer's live testimony offered during trial, like a prosecutor's statements made during trial, may often "carr[y] an `"aura of special reliability and trustworthiness."'" United States v. Espinosa, 827 F.2d 604, 613 (9th Cir.1987) (quoting United States v. Young, 745 F.2d 733, 766 (2d Cir.1984) (quoting United States v. Fosher, 590 F.2d 381, 383 (1st Cir.1979))). However, the Ninth Circuit Court of Appeals has also noted that an officer's statements made during a pretrial interview are "not the types of statements that carry any special aura of reliability." Dubria, 224 F.3d at 1002.
The Ninth Circuit has concluded that juries will not accord any special credibility to statements made by police officers during a pretrial interview. Dubria, 224 F.3d at 1001 n. 2. Although the Dubria court recognized that the police officers had "`suggested in a variety of ways they did not believe [the defendant],'" the court noted that juries understand that the police typically do not believe the defendant's story. Id. Furthermore, the court explained that a jury would not give the officer's statements in a pretrial interview any more weight than the fact that the prosecutor had chosen to bring charges against the defendant. Id. Usually, the prosecutor brings charges against a defendant because, like the police, the prosecutor does not believe the defendant's story. Presumably, juries do not attach any special significance to this fact. Because officer's statements made during a pretrial interview are not like statements made by a prosecutor during a trial, we decline to adopt the position of the Kitchen court.
On the other hand, the Missouri Supreme Court has concluded that an officer may testify about his statements accusing the defendant of lying, if such testimony is designed to provide context to the interview. See State v. O'Brien, 857 S.W.2d 212, 221 (Mo.1993). In O'Brien, the trial court allowed a police officer to testify that he had interrupted the defendant during a pretrial interview and accused the defendant of lying. Id. The O'Brien court concluded that the admission of the out of court statement was not error because the witness was "not telling the jury that, in his opinion, the defendant [was] a liar"; rather, the court concluded that the officer was "describing the give-and-take of his interrogation." Id. The O'Brien court recognized that the statements were admissible to help the jury understand what happened during the course of the interview. See id.
Similarly, the Ninth Circuit Court of Appeals concluded that the defendant's federal due process rights were not violated when the trial court admitted into evidence the detective's statements that the defendant was lying. Dubria, 224 F.3d at 1001. As in the current case, the detective's statements in Dubria were also part of a taped interview, and the trial court refused to redact the statements. Id. The Dubria court noted that the officer's statements "gave context to Dubria's answers" and "were not the types of statements that carry any special aura of reliability." Id. at 1002.
Like the trial court in Dubria, the trial court in this case concluded that the officers' statements were necessary to give context to the defendant's responses. During trial, the State offered the defendant's responses rather than the officers' statements to impeach the defendant's credibility. We conclude that the officers' statements merely provided the necessary context that enabled the jury to assess the reasonableness of the defendant's responses. For this reason, we also conclude that the officers' statements did not constitute impermissible opinion testimony.

*1285 CONCLUSION
Generally, witnesses are not permitted to testify regarding the veracity of another witness because such testimony invades the province of the jury as the fact finder in a trial. Such testimony from a law enforcement officer may be especially prejudicial because the officer's testimony often carries a special aura of reliability. However, statements made by police officers during a taped interview accusing the defendant of lying do not carry this aura of reliability because such statements are part of a police interview technique commonly used to determine whether a suspect will change her story during the course of an interview. The officers' statements are not testimony and are admissible to provide context to the relevant responses of the defendant. Since we have concluded that the officers' statements do not constitute impermissible opinion testimony, we reverse the decision of the Court of Appeals and affirm the conviction of the defendant.
SMITH, IRELAND, and BRIDGE, JJ., concur.
ALEXANDER, C.J. (concurring).
I agree with Justice Sanders that the trial court committed error when it denied Kenneth Demery's motion to redact from a transcript of Demery's interview by officers of the Pierce County Sheriff's Department, an officer's accusation that Demery was not telling them the truth. As Justice Sanders correctly observes, the officer's accusation was opinion evidence regarding Demery's veracity that would not have been admissible pursuant to ER 608(a) in live testimony and, consequently, should not have been admitted in recorded form. Notwithstanding my agreement with Justice Sanders, I nevertheless concur in the result reached by the majority. I do so because, in my view, the error was harmless in that the officer's testimony did not have a material effect on the outcome of the trial.
Although the Court of Appeals concluded that it was constitutional error for the trial court to admit the opinion evidence, Demery asserts here that the error was not of constitutional magnitude. While the State contends that the trial court did not err in admitting the officer's recorded statement, it indicates that if there were error, it did not rise "to constitutional dimensions." Pet. for Review at 10. Because the parties agree that the error, if any, was not of constitutional magnitude, we need not apply a constitutional error analysis. See RAP 12.1(a) ("[T]he appellate court will decide a case only on the basis of issues set forth by the parties in their briefs.").
The test we apply when evaluating nonconstitutional error is that an "`error is not prejudicial unless, within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.'" State v. Smith, 106 Wash.2d 772, 780, 725 P.2d 951 (1986) (quoting State v. Cunningham, 93 Wash.2d 823, 831, 613 P.2d 1139 (1980)). Under this standard, I have no difficulty in concluding that the trial court's error was harmless. I reach this determination because the accusation contained in the law enforcement officer's recorded statement does not appear to be a significant part of the State's case. Indeed when the statement is considered in light of the officer's testimony at trial, it is apparent that the officer was not expressing a judgment about the defendant's veracity. Rather, he concedes that he was making the accusation merely in an effort to trick the defendant into changing his story.
I am satisfied, in short, that the jury did not place significant weight on the officer's accusation, but instead relied on the substantial evidence of the defendant's guilt. More specifically, there was evidence that the gun that was used in the commission of the crime was found precisely where the victim had told the police it had been hidden by the defendant. It is also significant that when one of the law enforcement officers announced to Demery that Demery and the crime victim were to be led to the location of the weapon, Demery ran away and had to be apprehended. In addition, the record shows that after law enforcement officers managed to take Demery into custody, they found two $50 bills on his person. What they found was consistent with the victim's report to the police that Demery had taken two $50 bills from him. The fact that Demery testified at trial that he had not told the victim that *1286 he had this amount of money on his person undoubtedly added to the weight of this evidence.
In the final analysis, this case, like many others, turned on the jury's determination regarding the relative credibility of the crime victim and the defendant. Clearly the jury found the victim more credible than Demery and there was significant evidence to support that conclusion. Although the law enforcement officer's recorded statement that Demery needed "to start tellin' the truth" should not have been admitted in evidence, it was a relatively insignificant aspect of the trial and it did not materially influence its outcome. Ex. 23, at 6.
SANDERS, J. (dissenting).
The majority concludes a recorded expression of an officer's opinion that a suspect is lying is admissible at trial even though the same officer would not be permitted to offer such an opinion in live testimony. I see no distinction between the two. It matters not whether the opinion was rendered in the context of an interrogation interview or in context of direct testimony in open court. The end result is the same: The jury hears the officer's opinion.
A witness may not offer opinion testimony regarding the guilt or veracity of a defendant. Majority at 1282. See also State v. Black, 109 Wash.2d 336, 348, 745 P.2d 12 (1987) ("No witness, lay or expert, may testify to his opinion as to the guilt of a defendant, whether by direct statement or inference."); State v. Garrison, 71 Wash.2d 312, 315, 427 P.2d 1012 (1967) (Whether a defendant is guilty is a question "solely for the jury and [is] not the proper subject of either lay or expert opinion."); State v. Farr Lenzini, 93 Wash.App. 453, 459-60, 970 P.2d 313 (1999) ("Because it is the jury's responsibility to determine the defendant's guilt or innocence, no witness, lay or expert, may opine as to the defendant's guilt, whether by direct statement or by inference."); City of Seattle v. Heatley, 70 Wash.App. 573, 577, 854 P.2d 658 (1993) ("The general rule is that no witness, lay or expert, may `testify to his opinion as to the guilt of a defendant, whether by direct statement or inference.'" (quoting Black, 109 Wash.2d at 348, 745 P.2d 12)). Further, the credibility of a witness may not be attacked with opinion evidence. ER 608(a). See also Heatley, 70 Wash.App. at 577, 854 P.2d 658 ("Because issues of credibility are reserved strictly for the trier of fact, testimony regarding the credibility of a key witness may also be improper.").
The majority posits, "One major issue involved in this case is whether statements made by police officers during a taped interview fall within the purview of `opinion testimony.'" Majority at 1282. Not so. Whether such statements are properly characterized as "opinion testimony" is wholly immaterial for purposes of determining their admissibility under ER 608. By focusing on whether the statements in the taped interview constitute "testimony" the majority makes the same mistake as the trial court below: it confuses "testimony" with "evidence."
A plain reading of ER 608(a) clearly demonstrates no evidence (as opposed to testimony) of a witness's character may be admitted in the form of an opinion. The rule provides:
(a) Reputation Evidence of Character.
The credibility of a witness may be attacked or supported by evidence in the form of reputation, but subject to the limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by reputation evidence or otherwise.
ER 608(a). This differs markedly (and intentionally) from the comparable federal rule which does authorize the introduction of character evidence in the form of opinion. See Fed.R.Evid. 608(a) ("The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation."). The Comment to the Washington rule specifically states:
This rule differs from Federal Rule 608 in that it does not authorize the introduction of evidence of character in the form of an opinion.... The drafters of the Washington rule felt that impeachment by use of opinion is too prejudicial and on a practical *1287 level is not easily subject to testing by cross examination or contradiction.
ER 608 cmt. § (a).
At trial the State argued the defendant's taped statement was admissible even though it conceded the officer could not testify on direct examination that he thought the defendant was lying. RP at 44, 55. Demery argued the taped statement was inadmissible because no witness may directly or indirectly comment on the guilt or credibility of the defendant. RP at 47-55 (citing City of Seattle v. Heatley ); RP at 48. The trial court distinguished Heatley because it, and the cases it cites, involved a testimonial statement. The court specifically queried Demery on the import of this factual distinction:
The Court: What about the fact that this is not testimony?
Mr. Sepe: I don't think it matters. It is evidence. I don't think it is relevant whether it is testimony or not. It is a comment. It is evidence that comments on the credibility [of the witness].
RP at 59. But the court nevertheless admitted the officers' statements "since they [were] not testimonial in nature." RP at 61. The prosecutor read the jury a portion of the taped interview in which the police officer accused Demery of lying during his closing argument. RP at 393. Demery's attorney responded: "Objection. Comment on the credibility of a witness [is an] improper argument." RP at 393. The court overruled the objection because the prosecutor was reading from the transcript which had been previously admitted. RP at 393.
This was error. Rule 608(a) permits a party to attack the credibility of a witness by admitting evidence of the witness's reputation for truthfulness or untruthfulness. The rule prohibits the admission of evidence, not limited to testimony, which constitutes an attack on the veracity of a witness in the form of an opinion. Nothing in the rule itself, nor in the comments which follow, suggests direct testimony in open court is the only evidence a party may use to attack the credibility of a witness. A conclusion that the evidence here was not opinion "testimony" is therefore irrelevant. The majority mistakenly treats the word "testimony" as if it were a synonym for "evidence." It is not.
Moreover, as Demery argued on appeal, our case law does not hold testimony from the witness stand which comments on the guilt or credibility of a witness is the only form of evidence forbidden. Br. of Appellant at 23. Warren v. Hart, 71 Wash.2d 512, 429 P.2d 873 (1967) determined the issuance or nonissuance of a citation by an investigating law enforcement officer is inadmissible opinion evidence. We did not conclude issuance or nonissuance of a citation constitutes inadmissible opinion testimony. Rather, as the majority concedes, we found issuance or nonissuance of a citation constitutes inadmissible opinion evidence:
"While an arrest or citation might be said to evidence the on-the-spot opinion of the traffic officer as to respondent's negligence, this would not render the testimony admissible. It is not proper to permit a witness to give his opinion on questions of fact requiring no expert knowledge, when the opinion involves the very matter to be determined by the jury, and the facts on which the witness founds his opinion are capable of being presented to the jury. Johnson v. Caughren, 55 Wash. 125, 104 P. 170 [1909]; Bruenn v. North Yakima School Dist. [No. 7], 101 Wash. 374, 172 P. 569 [1918]. The question of whether respondent was negligent in driving in too close proximity to appellant's vehicle falls into this category. Therefore, the witness' opinion on such matter, whether it be offered from the witness stand or implied from the traffic citation which he issued, would not be acceptable as opinion evidence."
Warren, 71 Wash.2d at 514, 429 P.2d 873 (emphasis added) (quoting Billington v. Schaal, 42 Wash.2d 878, 882, 259 P.2d 634, 637 (1953)). We focused on whether the evidence was a comment on facts to be determined by the jury. It doesn't matter if the opinion is given directly during testimony in open court or if it is implied in some other way (like issuing a traffic citation).
Nevertheless the majority permits this tape to be admitted because "the officers' statements merely provided the necessary context that enabled the jury to assess the reasonableness of the defendant's responses." *1288 Majority at 1284. Although these statements were made in the context of a custodial interrogation of a criminal defendant, the actual words clearly and simply state the officers' belief that Demery was lying.[1] During his closing argument the prosecutor used the transcripts from the interrogation (over the defendant's objection) to argue an innocent man would have reacted differently to a false accusation, RP at 393, demonstrating the State used the interrogation transcript to argue Demery was lying.
Although the majority admits, "when the trial court admits third party statements to provide context to a defendant's responses, the trial court should give a limiting instruction to the jury, explaining that only the defendant's responses, and not the third party's statements, should be considered as evidence." Majority at 1283. But, in its next breath, the majority excuses the fact that there was no limiting instruction given here. Id. See also Resp't's Suppl. Br. at 8, Clerk's Papers at 38-60. Incredibly, the majority concludes a curative instruction was not necessary "because the jury clearly understood from the officers' testimony that the statements were offered solely to provide context to the defendant's relevant responses." Majority at 1283. Here I am at a disadvantage. Unlike the majority I cannot read minds, especially the minds of jurors. Rather I am limited to a review of the evidence that went to the jury and the instructions provided by the court.
This lack of limiting instruction also distinguishes this case from Dubria v. Smith, 224 F.3d 995 (9th Cir.2000), cert. denied, 531 U.S. 1148, 121 S.Ct. 1089, 148 L.Ed.2d 963 (2001), upon which the majority mistakenly relies. Dubria was convicted of murder, rape, and other offenses after a jury was permitted to hear a taped interview in which a police investigator accused him of lying. Dubria, 224 F.3d at 997. The Ninth Circuit held, "[E]ven if it was error to admit the tapes and transcripts without redacting Detective Detar's statements, any error was cured by the judge's two cautionary instructions." Id. at 1002 (emphasis added).
As the majority concedes, Washington cases hold where an opinion of a defendant's guilt is expressed by a government official, such as a policeman, a jury is especially prone to influence. Majority at 1283; see also State v. Carlin, 40 Wash.App. 698, 703, 700 P.2d 323 (1985), overruled on other grounds by Heatley, 70 Wash.App. at 573, 854 P.2d 658.
The law is similar in the Commonwealth of Pennsylvania where courts have concluded a taped interview in which police accuse a defendant of lying is inadmissible because such "statements [are] akin to a prosecutor offering his or her opinion of the truth or falsity of the evidence presented by a criminal defendant." Commonwealth v. Kitchen, 1999 PA Super. 100, 730 A.2d 513, 521. However, this majority summarily rejects Kitchen,[2] concluding the "officer's statements made during a pre-trial interview are not like statements made by a prosecutor during a trial." Majority at 1284. I disagree. The majority ignores the ultimate, impermissible, result of admitting such evidence: The jury hears the officers' opinions concerning the veracity of a witness.

CONCLUSION
There is no meaningful difference between permitting the jury to hear an officer directly call a defendant a liar in open court and *1289 permitting the jury to hear an officer call a defendant a liar on a tape recording. If we quite clearly forbid the former there is no reason to tolerate the latter. The drafters of the Washington rules of evidence intentionally crafted a rule which does not permit impeachment by opinion because they understood such evidence is too prejudicial. ER 608 cmt. Neither the rule nor our case law limiting this prohibition applies to only testimony given in open court. Rather the rule only permits the credibility of a witness to be attacked under a very narrow set of circumstances: (1) the evidence must be in the form of reputation, and (2) "the evidence may refer only to character for truthfulness or untruthfulness." ER 608(a). Notwithstanding, the majority here extends an open invitation for police officers to routinely include their personal opinions on the credibility and guilt of the accused in every taped interview they conduct. Today's ruling permits the State to indirectly introduce such character evidence in the form of an opinioneven though it would be forbidden from doing so directly.
Nemo potest facere per obliquum quod non potest facere per directum.[3]
I dissent.
JOHNSON, MADSEN, and CHAMBERS, JJ., concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] The defendant asserts that the trial court committed reversible error by admitting the following statements made by the police during the taped interview:

[Detective Adamson:] It's [the gun] got, it's gonna have your fingerprints on it. You ran from the police and right now nobody's gonna believe your story. Now, you need to start tellin' the truth.
[Defendant:] Okay.
Exhibit 23, at 6.
[Detective Sergeant Estes:] Are you sure this is the story that you wanna stick with?
[Defendant:] Yeah. That's the truth.
[Adamson:] Do you realize what you're lookin' at?
[Defendant:] What am I lookin' at?
[Adamson:] Three counts of first degree kidnapping, one count of robbery.
[Estes:] All of `em Class A felonies. We'll even throw in the possession of the firearm that you're not allowed to possess.
[Defendant:] Oh, no.
[Adamson:] Yeah. So you're sure this is the story you wanna stick with?
[Defendant:] That's the truth. I'm not gonna sit here and lie to you especially when I know I didn't do nothin'.
Exhibit 23, at 11.
[Adamson:] How have you been treated since you've been here?
[Defendant:] I've been treated all right. I mean you guys are lookin' at me, you know. [sic] talkin' to me like I'm lying.
[Adamson:] Cause you are.
[Defendant:] Oh.
Exhibit 23, at 11.
[3] In fact, the State's witness testified that no fingerprints were found on the gun. 3 Report of Proceedings (RP) at 173.
[4] Generally, "[a] statement made out of court is inherently less reliable than a sworn statement made at trial because the declarant has not been subjected to the safeguards that ensure the accuracy of her testimony." Kimberley Seals Bressler, Comment, Balancing the Right to Confrontation and the Need to Protect Child Sexual Abuse Victims: Are Statutes Authorizing Televised Testimony Serving Their Purpose? 12 U. PUGET SOUND L.REV. 109, 113 (1988). The "oath" is important because the person giving it "signifies that he is bound in conscience to perform an act [such as testifying] faithfully and truthfully." BLACK'S LAW DICTIONARY 1220 (4th ed.1951). Out of court statements and sworn testimony presumably affect juries in different ways. For example, the jury is present when the witness swears that her testimony will be the truth. By this act, the jury may assume that the witness is bound by conscience to tell the truth. On the other hand, regarding out of court statements, the jury can discern little about the demeanor of the declarant because the jury was not present when the declarant made the statement. It may be due in part to this "aura of reliability" surrounding sworn statements that the drafters of the Washington rules on evidence sought to prohibit the use of opinion testimony. Assuming this to be so, it would be logical to assume that a jury would not afford the same level of credibility to an out of court statement and that such a statement would be much less likely to prejudice the jury against the defendant.
[5] Many federal circuit courts have recognized that statements made by a third party in a taped interview are admissible to provide context to the defendant's answers. See United States v. Flores, 63 F.3d 1342, 1358-59 (5th Cir.1995); see also United States v. Catano, 65 F.3d 219, 225 (1st Cir.1995); United States v. Sorrentino, 72 F.3d 294, 298 (2d Cir.1995); United States v. Gutierrez-Chavez, 842 F.2d 77, 81 (5th Cir.1988); United States v. Whitman, 771 F.2d 1348, 1351 (9th Cir.1985).
[6] In addition, the Kitchen court noted that when a police officer questions a defendant about whether she had lied during the interview, then the officer's statement need not be redacted. Kitchen, 730 A.2d at 522. The Kitchen court failed to explain why asking a defendant if she was lying would be less prejudicial than stating that she was lying. The police presumably use both techniques to see whether the suspect will change her story during an interview.
[1] The following exchange is indicative of several that occurred during the course of the interrogation:

Q How have you been treated since you've been here?
A I've been treated all right. I mean you guys are lookin' at me, you know. talkin' to me like I'm lying.
Q Cause you are.
PL.'s Ex. 23, at 23.
[2] The Kitchen court was satisfied that to admit a tape recording of a police officer's attack on the veracity of a defendant would be tantamount to allowing a prosecutor to call the defendant a liar in open court and therefore did not address whether such statements were admissible under Pa.R.E. 608(a). Nevertheless it is worth noting the similarity between Pa.R.E. 608(a) and the comparable Washington rule. The language of the two rules is virtually identical and, like its Washington counterpart, the Pennsylvania rule does not permit the credibility of a witness to be attacked by opinion evidence. "Pa.R.E. 608(a)(1) and (2) differ from F.R.E. 608(a) in that they permit character for truthfulness or untruthfulness to be proven only by reputation evidence. Opinion evidence is not admissible." Pa.R.E. 608 cmt.1998; 42 Pa. Const. Stat. Ann. (West 1999).
[3] No man can do that indirectly which he cannot do directly.