# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  47528-6-II |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| LEO FANNON, | |
| Appellant. | |

BJORGEN, C.J. — A jury returned verdicts finding Leo Fannon guilty of unlawful possession of a controlled substance with intent to deliver, with a school zone enhancement, and four counts of unlawful possession of a controlled substance.  Fannon appeals his convictions, asserting that (1) the prosecutor committed misconduct by mischaracterizing evidence presented at trial and (2) his defense counsel was ineffective for failing to object to (i) the prosecutor's mischaracterization of evidence, (ii) the prosecutor's elicitation of testimony commenting on Fannon's credibility, (iii) the prosecutor's elicitation of testimony that rendered an opinion of his guilt, and (iv) the prosecutor's elicitation of testimony commenting on his right to silence. Fannon also raises numerous issues in his statement of additional grounds (SAG) for review, all

of which either lack merit or require examination of matters outside the appellate record. We affirm.

FACTS

On November 12, 2014, Longview police officers executed a search warrant at a Longview residence. After entering the residence, Sergeant Raymond Hartley saw Fannon exit a bedroom. Hartley searched the bedroom and saw bags containing methamphetamine and heroin on a nightstand. Hartley also saw a black leather jacket in the bedroom, which contained a set of scales with residue on them, packaging material, a bag containing methamphetamine, eight oxycodone pills, ten methadone pills, and two clonazepam pills. Additionally, officers found $2,615 in cash after searching Fannon incident to his arrest.

According to Detective Seth Libbui, Fannon agreed to speak with him after being advised of his *Miranda*[1] rights. Libbui stated that Fannon admitted that the bedroom and the drugs contained therein were his but denied that he sold drugs. Libbui also stated that Fannon had told him that he obtained his cash by fixing cars and selling them.

The State charged Fannon by amended information with one count of unlawful possession of a controlled substance with intent to deliver and four counts of unlawful possession of a controlled substance. The State also alleged a school zone sentencing enhancement with regard to his unlawful possession with intent to deliver charge.

During Hartley's trial testimony, defense counsel asked to voir dire Hartley, and the

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

following exchange took place:

> [Defense counsel]: Sergeant Hartley, where was that scale found?
> [Hartley]: Inside of a jacket in that bedroom.
> [Defense counsel]: In that same bedroom that you were in before?
> [Hartley]: Yes.
> [Defense counsel]: And do you know anything about the jacket itself? Do you know what kind of jacket it was?
> [Hartley]: I believe it was a black leather jacket.
> [Defense counsel]: Do you know what size?
> [Hartley]: Mr. Fannon's size actually; it looked to be about a medium.
> [Defense counsel]: When you say Mr. Fannon's size, did you try it on him?
> [Hartley]: No.
> [Defense counsel]: So that's just a guess?
> [Hartley]: No, I have other information that would corroborate that.

Report of Proceedings (RP) at 133. The State subsequently referred to the jacket at issue as "Mr. Fannon's jacket" on multiple occasions during Hartley's testimony, asking the following:

> [State]: Now, besides these eight pills, did you locate anything else inside of Mr. Fannon's jacket?
> . . . .
> [State]: Okay. And were this—was that the only things you found in Mr. Fannon's jacket?
> . . . .
> [State]: Now, you indicated you found these items in Mr. Fannon's jacket, is that correct?
> . . . .
> [State]: Would you recognize Mr. Fannon's jacket if you saw it again?

RP at 140, 142, 144. In response to this final question, Hartley testified that the jacket hanging on the back of Fannon's chair in the courtroom was the same jacket he had found in the bedroom.

Libbui testified that he asked Fannon what cars he had sold to obtain his cash, to whom he had sold the cars, and whether he had any documentation of such sales. The State then asked

Libbui why he had asked Fannon these types of questions, to which Libbui responded,

"Because—well, I didn't believe him. The way he said it to me and the evidence, I—I initially

didn't feel that that matched up to what I saw." RP at 236. Defense counsel did not object to the

State's question or to Libbui's response. The following exchange also took place during

Libbui's trial testimony:

> [State]: Was he—was he providing you with any information as to how he acquired this money at this point?
> [Libbui]: He wouldn't. He—he was unable to provide me anything, any—anything factual of who he sold it to. All the questions I just mentioned, there was no evidence provided to me that could verify that.
> [State]: Okay. So you—so you had been unable to verify any—any information he was providing to you?
> [Libbui]: I had no start. There was absolutely nothing that would point me in even a direction where I could even call someone, or look up something in a DMV record, or there's no—I mean, there's nothing. He—I was given nothing to work with, so—.

RP at 236-37. Again, defense counsel did not object.

Fannon testified in his defense. Fannon denied that he lived at the residence searched by

police and denied that the jacket or controlled substances found by police belonged to him.

Fannon stated that he obtained his cash from car sales.

The jury returned verdicts finding Fannon guilty of all the charges against him. The jury

also returned a special verdict finding that Fannon committed unlawful possession of a

controlled substance with intent to deliver within 1,000 feet of the perimeter of a school ground.

Fannon appeals his convictions.

4

ANALYSIS

I. PROSECUTORIAL MISCONDUCT

Fannon first contends that the prosecutor committed misconduct during Hartley's testimony by repeatedly referring to the jacket alleged to have contained controlled substances as "Mr. Fannon's jacket." Br. of Appellant at 9. We disagree.

A defendant claiming prosecutorial misconduct must show both improper conduct and resulting prejudice. *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009). Prejudice exists when there is a substantial likelihood that the misconduct affected the verdict. *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006). Where, as here, a defendant does not object to alleged misconduct at trial, the defendant fails to preserve the issue on appeal unless he or she establishes that the misconduct was so flagrant and ill-intentioned that it caused an enduring prejudice incurable by a jury instruction. *State v. Thorgerson*, 172 Wn.2d 438, 443, 258 P.3d 43 (2011).

Fannon asserts that the prosecutor's characterization of the jacket allegedly containing controlled substances as "Mr. Fannon's jacket" during Hartley's testimony was misconduct because the State did not present any evidence to support the inference that the jacket belonged to him. This, however, mischaracterizes the record. Although the State had not yet presented evidence linking the jacket to Fannon when the prosecutor referred to the jacket as "Mr. Fannon's," the State subsequently presented evidence that (1) Fannon had admitted to police that the bedroom where the jacket was found was his, (2) Fannon had admitted to police that the drugs found in that same bedroom were his, and (3) the jacket Fannon brought with him to court

was the same jacket Hartley found in the bedroom. One may reasonably infer from this evidence that the jacket was Fannon's. Therefore, his argument fails.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, Fannon contends that his defense counsel was ineffective for failing to object to (1) the prosecutor's mischaracterization of evidence, (2) the prosecutor's question eliciting evidence commenting on his credibility, (3) the prosecutor's questions eliciting an opinion of his guilt, and (4) the prosecutor's questions eliciting evidence commenting on his right to silence. On all points, we disagree.

We review claims of ineffective assistance of counsel de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on his ineffective assistance of counsel claims, Fannon must show both that (1) defense counsel's representation was deficient and (2) the deficient representation prejudiced him. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011), *cert. denied*, 135 S. Ct. 153 (2014). Representation is deficient "if it falls 'below an objective standard of reasonableness.'" *Grier*, 171 Wn.2d at 33 (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Prejudice ensues if there is a reasonable probability that absent counsel's deficient performance, the result of the proceeding would have differed. *Grier*, 171 Wn.2d at 34. If Fannon fails to establish either prong, we need not inquire further. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

We strongly presume that counsel's representation was effective. *Grier*, 171 Wn.2d at 33. To overcome this presumption, Fannon must show the absence of any legitimate strategic or tactical reason explaining defense counsel's challenged conduct. *State v. Emery*, 174 Wn.2d

6

741, 755, 278 P.3d 653 (2012). Legitimate trial strategy or tactics cannot serve as the basis for an ineffective assistance of counsel claim. *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009).

A.      Mischaracterization of Evidence

Fannon first asserts that his counsel was ineffective for failing to object to the prosecutor's characterization of the jacket at issue as "Mr. Fannon's jacket" absent evidence in support. Br. of Appellant at 9. However, to the extent the that the prosecutor misrepresented the evidence by referring to the jacket as belonging to Fannon, there was no resulting prejudice because the State later presented evidence that the jacket belonged to Fannon. Accordingly, Fannon cannot demonstrate any prejudice resulting from defense counsel's failure to object to the prosecutor's characterization and, thus, he fails to show ineffective assistance of counsel on this ground.

B.      Comment on Credibility

Next, Fannon asserts that his defense counsel was ineffective for failing to object to the prosecutor's question eliciting testimony commenting on his credibility. Again, we disagree.

Generally, witnesses are not permitted to testify about their opinions of the defendant's credibility. *State v. Demery*, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001). Impermissible opinion testimony about the defendant's credibility "unfairly prejudices the defendant because it invades the exclusive province of the jury to make an independent determination of the relevant facts." *State v. Rafay*, 168 Wn. App. 734, 805, 285 P.3d 83 (2012) (citing *State v. Kirkman*, 159 Wn.2d 918, 927, 155 P.3d 125 (2007)). "Testimony from a law enforcement officer regarding the veracity of another witness may be especially prejudicial because an officer's testimony often

7

carries a special aura of reliability." *Kirkman*, 159 Wn.2d at 928. However, testimony based on "'direct knowledge of facts at issue'" rather than on "'one's belief or idea'" does not constitute opinion testimony. *Demery*, 144 Wn.2d at 760 (quoting BLACK'S LAW DICTIONARY 1486 (7TH ed. 1999)). It is improper for a prosecutor to ask a witness about his or her personal opinion of another witness's credibility. *State v. Jerrels*, 83 Wn. App. 503, 507-508, 925 P.2d 209 (1996).

Here Libbui testified that, in response to Fannon's claim that he obtained his cash from selling cars, he asked Fannon some simple follow-up questions such as, "what cars, who did you sell them to, do you have any documentation?" RP at 236. The prosecutor then asked Libbui, "So why are you asking him these types of questions?" to which Lubbui responded, "Because—well, I didn't believe him. The way he said it to me and the evidence, I—I initially didn't feel that that matched up to what I saw." RP at 236. Fannon argues that his defense counsel was ineffective for failing to object to the prosecutor's question and Libbui's response thereto.

Fannon does not explain how, and we cannot conclude that, the prosecutor's question, "So why are you asking him these types of questions?" was designed to elicit Libbui's personal opinion about Fannon's credibility. The prosecutor did not ask Libbui to state any opinion as to Fannon's credibility. The prosecutor merely asked Libbui why he was asking Fannon certain questions about his claim of obtaining cash through automobile sales, a legitimate point of inquiry and one not requiring an opinion on credibility in answer. Accordingly, we hold that defense counsel did not perform deficiently by failing to object to the question. *Grier*, 171 Wn.2d at 33.

Fannon also argues that his counsel was ineffective in failing to object to Libbui's response to the prosecutor's question. The officer's testimony that he did not believe Fannon

constituted a personal opinion of Fannon's credibility. Fannon, however, cannot succeed in demonstrating that his counsel was ineffective in failing to object to this opinion, because there is a legitimate tactical reason for that failure.

It has long been established that "[t]he decision of when or whether to object is a classic example of trial tactics [and o]nly in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal." *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662 (1989) (citing *Strickland*, 466 U.S. 668); *State v. Ermert*, 94 Wn.2d 839, 621 P.2d 121 (1980). Libbui's opinion testimony does not constitute such an egregious circumstance. Lubbui's opinion as to Fannon's credibility referred only to Fannon's statements regarding how he obtained his cash and did not extend to his opinion as to whether Fannon was guilty of his charged crimes. Defense counsel had a legitimate tactical reason not to object to the opinion testimony so as to not emphasize it to the jury. *See State v. McLean*, 178 Wn. App. 236, 247, 313 P.3d 1181 (2013) ("[I]t can be a legitimate trial tactic to withhold an objection to avoid emphasizing inadmissible evidence."), *review denied*, 179 Wn.2d 1026 (2014); *see also State v. Kloepper*, 179 Wn. App. 343, 354, 317 P.3d 1088 ("The decision to object, or to refrain from objecting even if testimony is not admissible, is a tactical decision not to highlight the evidence to the jury. It is not a basis for finding counsel ineffective."), *review denied*, 180 Wn.2d 1017 (2014). Because defense counsel had a legitimate tactical reason for not objecting to the opinion testimony, Fannon cannot demonstrate ineffective assistance on this ground.

C.       Opinion of Guilt

Next, Fannon contends that his counsel was ineffective for failing to object to the

prosecutor's question eliciting Libbui's opinion of his guilt. We disagree.

Generally, no witness may offer testimony regarding his or her opinion of the defendant's

guilt. *Demery*, 144 Wn.2d at 759. A witness expresses opinion testimony when the witness

testifies to beliefs or ideas rather than the facts at issue. *Demery*, 144 Wn.2d at 760. However,

"testimony that . . . is based on inferences from the evidence is not improper opinion testimony."

*City of Seattle v. Heatley*, 70 Wn. App. 573, 578, 854 P.2d 658 (1993).

Fannon argues that his defense counsel was ineffective for failing to object to the

following exchange on the basis that it elicited improper opinion testimony as to his guilt:

> [State]:    Okay. Did you ask him any questions about whether he was
> actively selling controlled substances or anything about the money that was found
> on his person?
> [Libbui]: I did question him. When I—when I had observed the stuff, I had
> had—it looked consistent with dealing and so—and that—then that's kind of the
> angle I started talking to him about, and I said, you know, it's—then I explained to
> him that's what I saw and—and he said it wasn't. He said that was—he wasn't
> dealing drugs, that—that they were from automotive sales, that he fixes up cars to
> sell them.
> [State]:    Okay. Now, why were you asking him about the money that you
> had located and the drugs that you had located?
> [Libbui]: Because the amount of money and—and the way the—the smaller
> denominations were built up, it was—and—and the whole image of the—of the
> room, with the scale stuff and—and the—and even the setup of the house, how
> many people were there, that's all consistent with people selling or trafficking
> narcotics to the people waiting to buy, and the money—and the money, the same
> thing. It just adds to that whole—that whole case.

RP at 234-35.

In this exchange the prosecutor asked Libbui whether he had asked Fannon certain

questions during his investigation and why Libbui had asked those questions. The prosecutor did

10

not ask Libbui to state any opinion, let alone an opinion of Fannon's guilt. Further, as shown below, Libbui's responses were not improper opinion testimony. Accordingly, we hold that Fannon's defense counsel did not perform deficiently by declining to object to the prosecutor's questions and, thus, his ineffective assistance of counsel claim cannot succeed on this ground.

To the extent that Fannon is also claiming ineffective assistance based on defense counsel's failure to object to Libbui's responses, that claim also cannot succeed. Libbui's testimony—that the evidence he had observed at the house and on Fannon's person was consistent with dealing narcotics—was based on Libbui's direct observations and the inferences drawn from those observations. The testimony contained no opinion on Fannon's guilt. Although Libbui's testimony that the evidence he had observed was consistent with dealing drugs supported a jury finding that Fannon was guilty of possession of controlled substances with intent to deliver, "[t]he fact that an opinion encompassing ultimate factual issues *supports* the conclusion that the defendant is guilty does not make the testimony an improper opinion on guilt." *Heatley*, 70 Wn. App. at 579. Because Libbui did not express an improper opinion of Fannon's guilt, Fannon cannot demonstrate either deficient performance or resulting prejudice from his defense counsel's failure to object to the testimony. Accordingly, his ineffective assistance of counsel claim cannot succeed on this ground.

D.      Comment on Right to Silence

Finally, Fannon asserts that his defense counsel was ineffective for failing to object to the prosecutor's question eliciting testimony commenting on his right to silence. Again, we disagree.

11

The Fifth Amendment of the United States Constitution and article I, section 9 of the Washington Constitution "guarantee a criminal defendant the right to be free from self-incrimination, including the right to silence." *State v. Knapp*, 148 Wn. App. 414, 420, 199 P.3d 505 (2009). A police witness "may not comment on the silence of the defendant so as to infer guilt from a refusal to answer questions." *State v. Lewis*, 130 Wn.2d 700, 705, 927 P.2d 235 (1996). However, when a defendant waives his or her right to remain silent following adequate *Miranda* warnings and chooses to speak with police, a police witness may comment on what the defendant did and did not say. *State v. Young*, 89 Wn.2d 613, 620-21, 574 P.2d 1171 (1978); *State v. Clark*, 143 Wn.2d 731, 765, 24 P.3d 1006 (2001).

Fannon argues that his defense counsel was ineffective for failing to object to the following questions and answers thereto:

> [State]: Was he—was he providing you with any information as to how he acquired this money at this point?
> [Libbui]: He wouldn't. He—he was unable to provide me anything, any—anything factual of who he sold it to. All the questions I just mentioned, there was no evidence provided to me that could verify that.
> [State]: Okay. So you—so you had been unable to verify any—any information he was providing to you?
> [Libbui]: I had no start. There was absolutely nothing that would point me in even a direction where I could even call someone, or look up something in a DMV record, or there's no—I mean, there's nothing. He—I was given nothing to work with, so—.

RP at 236-37.

Fannon's argument fails. Fannon did not exercise his right to post-arrest silence following advisement of his *Miranda* warnings and instead chose to speak with police, stating that he obtained his cash through the sale of cars. Libbui's challenged testimony concerned Fannon's inability to provide police with details verifying his claim to have obtained cash

through car sales. Because Fannon waived his right to post-arrest silence and stated to police that he obtained his cash through car sales, the State could properly inquire, and Libbui could properly testify, about Fannon's failure to provide details verifying his statement to police. Accordingly, Fannon shows neither deficient performance nor resulting prejudice based on his defense counsel's failure to object to the challenged testimony and, thus, his ineffective assistance of counsel claim fails.

### III. SAG

In his SAG, Fannon first contends that the State either withheld from the defense or failed to preserve exculpatory evidence, specifically the jacket allegedly containing controlled substances. There is no support in the appellate record to support this contention as Hartley testified that Fannon brought the jacket with him to the courtroom on the first day of trial. To the extent that Fannon relies on matters outside the appellate record to support this claim, he must raise the claim in a personal restraint petition. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

Second, Fannon contends in his SAG that the prosecutor committed misconduct by asking whether Hartley saw the jacket at issue in the courtroom because the prosecutor knew that the State had withheld or failed to preserve the actual jacket found by police. Again, the record does not support Fannon's claim that the State withheld or failed to preserve the jacket. Accordingly, on this record, Fannon cannot show that the prosecutor's question regarding the location of the jacket was misconduct.[2]

---

[2] For this same reason, Fannon cannot show on this record that his defense counsel was ineffective for failing to object to the prosecutor's question regarding the location of the jacket.

13

Third, Fannon contends in his SAG that his defense counsel was ineffective for failing to object to Hartley's testimony that he found Fannon's wallet and cash in the bedroom. Fannon argues that Hartley's testimony was misleading because Libbui later testified that he had placed the wallet and cash in the bedroom after seizing them from Fannon following a search incident to Fannon's arrest. Accepting for the sake of argument that Hartley's testimony was misleading, Fannon cannot demonstrate resulting prejudice in light of Libbui's later testimony clarifying where he had found the wallet and cash. Accordingly, Fannon cannot demonstrate that his defense counsel was ineffective for failing to object to Hartley's testimony.

Fourth, Fannon appears to argue that his counsel was ineffective for failing to call certain witnesses at trial, failing to present a video recording taken from a police cruiser, and failing to investigate motor vehicle records that would support his claim that he had obtained his cash through car sales. Because review of these claims require examination of matters outside the appellate record, they must be raised in a personal restraint petition, and we do not further address them here. *McFarland*, 127 Wn.2d at 335.

Fifth, Fannon argues that his right to a fair trial was violated because he was shown a false statement before trial to coerce him to plead guilty. Again, this issue concerns a matter outside the appellate record that would be more appropriately raised in a personal restraint petition.

Finally, Fannon complains that the trial court judge improperly revoked his bail for appearing late on the second day of trial because he had timely appeared in court on that day. Even assuming for the sake of argument that Fannon is correct, he does not explain how the

14

No. 47528-6-II

improper revocation of his bail requires reversal of his convictions. Accordingly, we do not further address this issue.

IV. APPELLATE COSTS

Fannon is 59 years old, was determined to be indigent, and is serving an 84-month sentence. For these reasons, we exercise our discretion to waive appellate costs. *See State v. Sinclair*, 192 Wn. App. 380, 367 P.3d 612 (2016).

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Bjorgen, C.J.

BJORGEN, C.J.

We concur:

WORSWICK, J.

MAXA, J.

15