# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  49368-3-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| ANGEL MICHALAK, | |
| Appellant. | |

BJORGEN, C.J. — Angel Michalak appeals her conviction for third degree assault.  She argues that one of the State's witnesses gave improper opinion testimony as to guilt at trial.  She did not object to this testimony at trial.

We hold that the challenged testimony was not an impermissible opinion about guilt and therefore affirm.

## FACTS

On September 13, 2014, law enforcement officers responded to a reported disturbance at a gas station involving two suspects.  Officers Tyler Boling and Russell Mize arrived at the gas station, and each officer contacted one of the suspects.  Officer Boling attempted to speak with Michalak, who told Boling that she did not want to speak with him.  Boling attempted to separate Michalak from the other suspect because he was uncertain whether the call he was responding to potentially involved an incident of domestic violence.

Boling asked Michalak to stand up and walk to his vehicle so he could get an independent statement.  Michalak stood up and asked Boling if she was under arrest, stated that he could not arrest her, and asked to know what her rights were.  Boling again asked Michalak to accompany

him to his vehicle. Michalak responded by asking whether she was being detained, stated that

Boling could not detain her, and further stated that she did not have to comply with his request.

Boling then grabbed Michalak's arm above the elbow and attempted to physically escort her to

his vehicle. According to Boling, Michalak attempted to pull away from the officer and after a

moving a few steps, she sat down on the ground and began to flail her arms around. While on

the ground, Michalak kicked Boling's leg.

On September 17, 2014 the State charged Michalak with third degree assault based on

her kicking Boling.[1] At trial, Boling testified as follows:

| | |
|---|---|
| [Prosecution (P)]: | Now, when – when you went ahead and were kicked, were you – were you standing? You said you were standing in front of [Michalak] to her left? |
| [Boling]: | Correct. |
| [P]: | Did it appear that this was just an unintentional flay or did this appear to be directed at you? |
| [Boling]: | No, it was directed at me. |
| [P]: | How would you say that? |
| [Boling]: | Because she kicked at me. If she was just kicking, I would have never got hit. |

Verbatim Report of Proceedings (VRP) (July 11, 2016) at 52. The defense did not object to this

questioning. As part of its case, the State also admitted three videos of the physical struggle

between Boling and Michalak taken from three different police vehicles that were present or

arriving as the alleged assault occurred.

---

[1] Under RCW 9A.36.031(1)(g),

    [a] person is guilty of assault in the third degree if he or she, under circumstances not amounting to assault in the first or second degree:

      . . . .

    Assaults a law enforcement officer or other employee of a law enforcement agency who was performing his or her official duties at the time of the assault.

The defense waived its opening statement and rested at the conclusion of the State's case in chief. The court instructed the jury in part:

> You are the sole judges of the credibility of each witness. You are also the sole judges of the value or weight to be given to the testimony of each witness.
> In considering a witness'[s] testimony, you may consider these things: The opportunity of the witness to observe or know the things he or she testifies about; the ability of the witness to observe accurately; the quality of a witness'[s] memory while testifying; the manner of the witness while testifying; any personal interest that the witness might have in the outcome or the issues; any bias or prejudice that the witness may have shown; the reasonableness of the witness'[s] statements in the context of all of the other evidence; and any other factors that affect your evaluation or belief of a witness or your evaluation of his or her testimony.

VRP (July 12, 2016) at 125-26.

As part of its closing argument, the State played the three video recordings for the jury. The jury ultimately found Michalak guilty of third degree assault. Michalak appeals her conviction.

## ANALYSIS

Michalak argues that Boling gave impermissible opinion testimony as to her intent when he testified that her kick was directed at him. We conclude that Boling's testimony did not improperly express an opinion and therefore affirm. With that, it is not necessary to consider whether Michalak waived her challenge by failing to object at trial.

In general, a witness may not testify regarding the guilt or veracity of the defendant, because to do so would unfairly prejudice the defendant and usurp the function of the jury. *State v. Demery*, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001). However, a lay witness may offer opinions or inferences that are: (1) based on rational perceptions, (2) helpful to the jury, and (3) not based on scientific or specialized knowledge. *State v. Montgomery*, 163 Wn.2d 577, 591, 183 P.3d 267 (2008) (citing ER 701). For example, a witness may properly offer an opinion on

3

the speed of a vehicle, relative sobriety in a driving while intoxicated case, the value of one's own property, or the identification of a person from a videotape. *State v. Farr-Lenzini*, 93 Wn. App. 453, 462, 970 P.2d 313 (1999). In contrast, a witness may not opine on another person's mental capacity for the purpose of entering into a lease or whether a person's capacity was diminished absent knowledge of whether the individual was on drugs. *Id*. In *Farr-Lenzini*, this court held that a police officer's statement that the defendant "was attempting to get away from [the officer] and knew [he] was back there and [was] refusing to stop," was an impermissible opinion because the officer had insufficient factual information to speculate about the defendant's state of mind. *Id*. at 463-64.

The fact that an opinion supports a finding of guilt does not necessarily make the opinion improper, particularly where the opinion is supported by inferences from evidence. *State v. Blake*, 172 Wn. App. 515, 523, 298 P.3d 769 (2012). However, opinion testimony is more likely to be improper if it recites or parrots a legal conclusion. *City of Seattle v. Heatley*, 70 Wn. App. 573, 581, 854 P.2d 658 (1993). For example, in *State v. Quaale*, our Supreme Court reasoned that a law enforcement officer's testimony that the defendant was "impaired" was inappropriate because it "parroted the legal standard contained in the jury instruction definition for 'under the influence.'" 182 Wn.2d 191, 199-200, 340 P.3d 213 (2014). On the other hand, in *Heatley*, Division One of this court held that an officer's testimony that the defendant was "'obviously intoxicated,' 'affected' by alcohol, and could not drive 'in a safe manner' was similar to but not identical to the legal standards set forth in the jury instructions." 70 Wn. App. at 581. Aside from its conclusion that the opinion testimony at issue did not parrot a legal standard, the court held that the officer's opinion was appropriate, in part, because:

4

> [The officer's] opinion was based on his detailed testimony about his observations of [the defendant's] physical condition and performance on the field sobriety tests. The jury was therefore in a position to independently assess the opinion in light of the foundation evidence. [The officer] was available for cross examination, and the jury was instructed that it was the sole judge of credibility and the weight to be accorded the testimony of each witness. Under these circumstances, nothing in the record suggests that the testimony was unfairly prejudicial, *i.e.*, that it persuaded the jury to abdicate its responsibility and decide the case on a basis other than the evidence and the pertinent law.

*Heatley*, 70 Wn. App. at 581-82.

Our Supreme Court has developed a set of five considerations to aid courts in determining whether witness testimony constitutes impermissible opinion testimony. In addition to the circumstances of the particular case, a court considers: (1) the type of witness involved, (2) the specific nature of the testimony, (3) the nature of the charges, (4) the type of defense, and (5) other evidence before the trier of fact. *Montgomery*, 163 Wn.2d at 591. Opinion testimony by law enforcement officers as to veracity may be particularly prejudicial because an officer's testimony is often accompanied by a "special aura of reliability." *State v. Kirkman*, 159 Wn.2d 918, 928, 155 P.3d 125 (2007).

Michalak argues that Boling's testimony was analogous to the improper opinion testimony in *Quaale*, 182 Wn.2d 191. In *Quaale*, a law enforcement officer testified that "[t]here was no doubt [the defendant] was impaired," based on the horizontal gaze nastagmus (HGN) test the officer performed on the defendant. 182 Wn.2d at 195. Our Supreme Court determined that such testimony was improper opinion testimony because it exceeded the limits of testimony regarding a defendant's response to a HGN test as described in *State v. Baity*, 140 Wn.2d 1, 991 P.2d 1151 (2000). *Quaale*, 182 Wn.2d at 197-98. Specifically, the testimony was improper because (1) the opinion was stated in a manner that implied an "aura of scientific

certainty," and (2) the officer testified to a specific level of intoxication, despite the fact that "[t]he HGN test alone cannot reveal specific levels of intoxication." 182 Wn.2d at 198-99. In this case, Michalak does not argue that Boling's testimony carried an "aura of scientific certainty." Because the court's analysis in *Quaale* was concerned with whether an officer's testimony exceeded the proper boundaries of a scientific test, the analysis is distinguishable from the facts of this case.

Turning to the five considerations described in *Montgomery*, their application shows that Boling's testimony was permissible opinion testimony. Under the first factor, the type of witness, Boling's statement may have carried additional weight with the jury because he was a law enforcement officer, but he was also the victim in this case and experienced the alleged assault first hand. Turning to the second factor, Boling's testimony was that the kick "was directed at me." VRP (July 11, 2016) at 52. This testimony was based on Boling's rational perceptions, but not on any scientific or specialized knowledge. As to the third and fourth factors, the State charged Michalak with third degree assault, and her defense was a general denial with no testimony or evidence introduced by the defense. Regarding the fifth factor, the State introduced video records of the alleged assault from three different angles that the jury could compare to Boling's testimony.

Taken together, the *Montgomery* factors signal that Boling's testimony was appropriate. While there may be some concern that Boling's testimony was improper due to his status as a law enforcement officer, he was also the victim in the case, he testified on the basis of his personal perception of the events, he did not parrot a legal standard, and the jury was allowed to compare Boling's version of the events to the different video records presented at trial.

6

No. 49368-3-II

In addition, Boling's testimony satisfies the three-part test for permissible lay opinion testimony under ER 701. First, Boling's testimony that the kick was directed at him was based on his direct perception of the events. Second, Boling's testimony was helpful to the jury. Boling was at a closer vantage point than any of the recording cameras and could communicate to the jury the relative force and direction of Michalak's kick, such as whether the kick was a direct or glancing blow. Third, Boling's opinion did not rely on any scientific, technical, or otherwise specialized knowledge.

Under both *Montgomery* and ER 701, Boling's testimony was proper. Therefore we affirm Michalak's conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, C.J.

We concur:

JOHANSON, J.

SUTTON, J.

7