# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  48119-7-II |
| Respondent, | |
| v. | |
| JONATHAN PEREZ DUENAS, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Jonathan Perez Duenas appeals his convictions and sentence for one count of first degree child rape, two counts of first degree child molestation, and one count of third degree child molestation.  Duenas argues that (1) the trial court erred by admitting improper opinion testimony regarding (a) H.A.'s and K.L.'s [1] credibility and (b) Duenas's guilt; (2) the prosecutor committed misconduct by (a) eliciting improper opinion testimony, (b) arguing facts not in evidence, (c) making improper appeals to the jury's passions and prejudices, (d) vouching for H.A.'s and K.L.'s credibility, and (e) disparaging defense counsel; (3) his defense counsel was ineffective for (a) failing to object to impermissible opinion testimony, (b) failing to renew his child hearsay objection, and (c) failing to object to the prosecutor's misconduct; (4) the cumulative effect of the trial court's errors deprived him of a fair trial; (5) Duenas's convictions violated the prohibition against double jeopardy; (6) the trial court erred by imposing a sentence that exceeded the statutory maximum term; and (7) the trial court erred by ordering

---

[1] We use initials to identify child witnesses.  Gen. Order 2011–1 of Division II, *In Re The Use Of Initials Or Pseudonyms For Child Witnesses In Sex Crime Cases* (Wash. Ct. App.), http://www.courts.wa.gov/appellate_trial_courts/.

plethysmograph testing and prohibiting him from entering into a relationship with persons who have minor-aged children. The State concedes that Duenas's convictions violated the prohibition against double jeopardy, his sentence exceeded the statutory maximum, and imposition of plethysmograph testing was improper.

In his statement of additional grounds (SAG), Duenas claims the prosecutor committed misconduct by (1) bolstering H.A.'s credibility, (2) making improper appeals to the jury's passions and prejudices, (3) disparaging defense counsel, (4) minimizing the State's burden of proof, and (5) misrepresenting the role of the jury.

We accept some of the State's concessions and hold that the trial court imposed a sentence exceeding the statutory maximum and abused its discretion in ordering plethysmograph testing. But we reject Duenas's remaining arguments and the State's concession that Duenas's convictions violated the prohibition against double jeopardy. Accordingly, we affirm Duenas's convictions but remand for the trial court to amend the community custody term and to strike the plethysmograph testing community custody condition.

## FACTS

### I. BACKGROUND

In 2013, K.L. told her mother, Heather,[2] that Heather's fiancé, Duenas, had been touching both her and her sister, H.A. At the time of K.L.'s disclosure, K.L. was 14 years old, and H.A. was nine years old. Heather contacted police, and the State charged Duenas with first degree

---

[2] We use Heather's first name to protect the identity of K.L. We intend no disrespect.

child rape of H.A. (count I),[3] first degree child molestation of H.A. (count II),[4] first degree child

molestation of H.A. (count III),[5] and third degree child molestation of K.L. (count IV).[6]

At a pretrial hearing regarding the admissibility of H.A.'s hearsay statements, the State

asked Heather if there had been any major issues between H.A. and Duenas. Heather answered

in the negative. The State continued:

> [THE STATE]: How did you start the conversation?
> [HEATHER]: I—I said, [H.A.], is there anything that you would like to tell me?
> And she goes, No. And I said, Well, let me make this easy for you. I said your
> sister has already told me something that I think is really important that you should
> probably tell me.
> [THE STATE]: All right. And how did she respond?
> [HEATHER]: And she started crying.
> [THE STATE]: And do you recall what was said next?
> [HEATHER]: I—she told me—I said, Is there anything you want to tell me? And
> she started crying. . . . And then she—she told me that he had been touching her.

1 Verbatim Report of Proceedings (VRP) at 35-36. Duenas objected to the admission of H.A.'s

hearsay statements, arguing that H.A. had a motive to lie.[7]

The trial court ruled that H.A.'s hearsay statements would be admissible at trial because

they met the *Ryan*[8] factors and provided sufficient indicia of reliability. The court stated that it

---

[3] RCW 9A.44.073.

[4] RCW 9A.44.083.

[5] RCW 9A.44.083.

[6] RCW 9A.44.089.

[7] Duenas argued that the timing of the disclosure, which occurred shortly after his engagement to Heather, showed that the children were motivated to lie because they did not want Duenas interfering with their father or taking his place.

[8] *State v. Ryan*, 103 Wn.2d 165, 691 P.2d 197 (1984).

did not "see a strong enough argument for a motive to lie" because H.A. reluctantly told Heather and K.L. about the abuse. 1 VRP at 55. The trial court also determined that H.A.'s accounts of the abuse were consistent and noted that Heather had avoided making suggestive answers when she talked to H.A.

## II. TRIAL

At trial, H.A. testified that Duenas had touched her genitals and digitally raped her on the same day. H.A. also testified that Duenas touched her genitals on one other occasion.

Heather also testified at trial. In describing the day she first asked H.A. about the sexual assault allegations, she stated that she "just said, You know, is there anything you would like to tell me? . . . Your sister has already told me some things, and I just want to make sure that they're true." 2 VRP at 128. Heather continued:

> So I said, Let me make this easy on you. I was, like, [K.L.] told me that [Duenas] had been touching you. And I was, like, Is that true? And she said—I said, Is there anything you want to tell me? And she said, No. And then she is, like, Yeah.

2 VRP at 128. Duenas did not object. Heather later testified that H.A. had a "really bad attitude problem" in the months leading up to the sexual assault allegations and that H.A. mostly directed her attitude toward Duenas. 2 VRP at 138. Duenas did not object.

On cross-examination, Duenas asked Heather, "[H.A. and K.L. are] good kids and they do the right thing most of the time . . . isn't that true? But they do lie on occasion." 2 VRP at 158. Heather responded in the affirmative. On redirect, the following exchange took place:

> [THE STATE]: Defense counsel asked if they would occasionally not be completely honest as kids, correct?
> [HEATHER]: Correct.
> [THE STATE]: And they've told a fib or two in their day?
> [HEATHER]: Yeah.

4

[THE STATE]: Okay. Now, if they would be not forthcoming with you, would it be about smaller stuff or would it be about a massive issue like this?

[HEATHER]: I think it would be a smaller—I—something like this is not something that's just made up or something that they're going to lie about. It's—I mean, I can tell, especially when my kids are, like, Well we weren't going to tell you, but—you know what I mean? Like, it's not something that's just—yeah. I don't know how to explain it.

2 VRP at 159-60. Duenas did not object. Duenas testified in his defense and denied H.A.'s and K.L.'s allegations.

At the close of trial, the trial court instructed the jury that "[y]ou are the sole judges of the credibility of each witness. You are also the sole judges of the value or weight to be given to the testimony of each witness." Clerk's Papers (CP) at 20. The jury was also instructed that "[a] separate crime is charged in each count. You must decide each count separately. Your verdict on one count should not control your verdict on the other count." CP at 26. Additionally, the trial court instructed the jury that sexual intercourse included penetration by any object, including a body part, and that "sexual contact" means "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desires of either party." CP at 32.

During closing argument, the State argued:

The defendant raped and molested his soon-to-be stepchildren. . . . A lot of us go through our daily routines and our daily lives and we don't deal with child sex abuse or don't face it. And that's a very good thing. It would not be a good society, if we were all dealing with that on a daily basis.

And it's hard when you're faced with it. And it's hard when you're faced with it not in the abstract. It's easy to sit there and say, I recognize that this happens. It's easy to say that in the abstract. But when it's right there in front of you and you've gotten to know a child because they've testified in front of you, it's not easy to sit there and fully comprehend that that child has had that happen to them.

And that's actually one of the challenges in prosecuting these cases. . . . We have the obvious hurdle, that we need to prove our case beyond a reasonable doubt.

5

> But we also need 12 people to accept that this really did happen. And that's a hard thing to do.
>
> But the unfortunate reality is that this stuff happens. It happens to kids every day and it happened to [K.L.] and it happened to [H.A.]. And it happened to them at the hands of the defendant.

4 VRP at 386-87. Duenas did not object.

The State continued and noted that one count of first degree child rape and two counts of first degree child molestation pertained to H.A.; the remaining third degree child molestation count related to K.L. In discussing the charges related to H.A., the State argued:

> Now, both Counts 1 and 2 deal with the same incident, so I want to be clear on that. So [H.A.] described two incidents. The first incident, which involved the defendant putting his fingers in her vagina, and that is what's covered in Counts 1 and 2. So you have two different crimes charged at the same incident. And to help guide you on this, you have an instruction that says you're to treat each count separately.
>
> So what you do is you decide Count 1 and you come to a decision. And then separate from your decision on Count 1, you decide Count 2. So there isn't, oh, well, we found him guilty of Count 1, so we covered that incident. No, you then completely separately go in and you decide, independent of your determination on Count 1, do we think Count 2 occurred?

4 VRP at 388-89. Duenas did not object.

The State then addressed the third degree child molestation of K.L. charge, stating:

> So then she describes the defendant rubbing her calf. It's lasting about a minute. So what's going on at this point? Well, we can't get inside the defendant's head, but from the evidence, I would argue that what's going on is a couple of possibilities. One, he's testing the waters. He's rubbing her calf and seeing, okay, A. Is she awake? And B. Am I going to get some reaction? Because it's kind of an innocent part of the body. It's not obviously problematic.
>
> So he's rubbing her calf and he's not really getting a response. He's not getting her pushing away, so he continues. . . .
>
> . . . .
>
> Then, he works his way to her vagina. And she talked about this in a very unique, specific way. . . . That's detail that I would argue doesn't come out if somebody isn't being truthful about what happened. People—if somebody were fabricating something, they're not coming up with details like [K.L.] is coming up with. That's a detail that should send some shivers down some of you. Because that really paints a very troubling picture.

6

4 VRP at 398. Duenas did not object.

In concluding his closing argument, the State argued:

And I would argue that to dismiss this case as simply, a they said it happened case, wouldn't do justice to the evidence that's presented. It would mischaracterize it. Because we have more than that. We have the corroboration, we have people being consistent, we have a lack of motivation to lie.
     But more importantly, we also have the impact of evidence. . . .
          . . . .
     The impact that this has had on everybody involved is very real. What the defendant did to these children is very real and it has been proven to you. I'd ask that you come back guilty.

4 VRP at 411-13. Duenas did not object.

During closing argument, defense counsel attacked H.A.'s and K.L.'s credibility and argued that they fabricated the sexual assault allegations. Defense counsel also stated, "Now, how do we prove it didn't happen? Well, there's no physical evidence. We rely upon the testimony and we look at that testimony." 4 VRP at 416-17.

During rebuttal argument, the State noted that defense counsel was

accusing [H.A. and K.L.], knowing full well that their mother got to leave the stresses of her job, got to come home and spend time with them, that she was in love with the defendant, that they were happy and set to be married. And what he is accusing them of doing, is fabricating sexual assault allegations and carrying it through.

4 VRP at 423. The State also noted that "what [defense counsel] is accusing them of doing is absolutely egregious. . . . [N]obody here—and we don't have evidence so—what was actually going on?" 4 VRP at 424. Duenas did not object to the State's argument.

The State continued,

     Now, defense counsel, you know, brings up these points that we don't have physical evidence and that's kind of dovetailing, because there was some people during jury selection that said I want physical evidence. . . .

. . . He raises the bar for the State to a point where no prosecutor could ever clear that bar. And hammers on, well, it's not proof beyond a reasonable doubt.

And that's doing exactly what we talked about, is it's taking preconceived notions and that's not what we're supposed to do. It's saying that you need physical—or you need DNA [(deoxyribonucleic acid)].

. . . .

Beyond a reasonable doubt is described and now you have a definition. It's when you have an abiding belief in the charges, that's it. . . .

So when you are analyzing arguments the defense made, you got to ask yourself, does it affect my abiding belief that this happened? And the defense argument can be effective, but it's misleading because I don't have to put on a perfect case. The law doesn't require me to put on a perfect case. That's why I don't have to prove my case beyond all possible doubt whatsoever.

4 VRP at 428-30. Duenas did not object.

### III. Sentencing

The jury found Duenas guilty of all charges. The court sentenced Duenas to a total of 175 months in confinement. Duenas's sentence included 54 months of incarceration and 36 months of community custody for the third degree child molestation conviction. The court also ordered that Duenas "submit to plethysmography exams, at [his] own expense, at the direction of the community corrections officer" and that he "not enter into a relationship with anyone who has minor aged children residing in or visiting their home without the approval of the therapist and the [community corrections officer]" as community custody conditions. CP at 57, 76. Duenas appeals his convictions and sentence.

### ANALYSIS

#### I. Impermissible Opinion Testimony

Duenas argues that Heather's testimony that H.A. and K.L. would not lie about an issue like sexual assault constituted improper opinion testimony regarding (a) H.A.'s and K.L.'s

8

credibility and (b) Duenas's guilt. The State argues that Duenas failed to preserve this issue for appeal. We agree with the State.

A defendant may assign evidentiary error on appeal only on a specific ground made at trial. *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007). Generally, we will not consider a claim of error for the first time on appeal unless it is a manifest error affecting a constitutional right. RAP 2.5(a)(3). To demonstrate manifest error, the defendant must show actual prejudice by identifying a constitutional error and showing that the alleged error actually affected his rights at trial. *Kirkman*, 159 Wn.2d at 926-27. To determine if the defendant claims a manifest constitutional error, we preview the merits of the defendant's claim to see if it would succeed. *State v. Kirwin*, 165 Wn.2d 818, 823, 203 P.3d 1044 (2009).

The trial court has wide discretion in determining the admissibility of evidence, and we review its decision of whether to admit evidence for abuse of discretion. *State v. Demery*, 144 Wn.2d 753, 758, 30 P.3d 1278 (2001). A trial court abuses its discretion when its decision to admit evidence is manifestly unreasonable or based on untenable grounds or reasons. *State v. Gunderson*, 181 Wn.2d 916, 922, 337 P.3d 1090 (2014).

Generally, no witness may offer testimony in the form of an opinion regarding a witness's credibility or the defendant's guilt. *Demery*, 144 Wn.2d at 759; *Kirkman*, 159 Wn.2d at 927. Such testimony is unfairly prejudicial to the defendant because it invades the exclusive province of the jury. *Demery*, 144 Wn.2d at 759.

"[W]hen a witness does not expressly state his or her belief of the victim's account, the testimony does not constitute manifest constitutional error." *State v. Warren*, 134 Wn. App. 44, 55, 138 P.3d 1081 (2006), *aff'd on other grounds*, 165 Wn.2d 17, 195 P.3d 940 (2008), *cert.*

*denied*, 556 U.S. 1192 (2009). Similarly, manifest constitutional error is not present unless a witness gives an explicit or near explicit opinion on the defendant's guilt. *State v. King*, 167 Wn.2d 324, 332, 219 P.3d 642 (2009). Moreover, the admission of improper opinion testimony can be cured by a proper instruction. *State v. Hager*, 171 Wn.2d 151, 159, 248 P.3d 512 (2011).

On cross-examination, Duenas asked Heather if H.A. and K.L. lied on occasion. On redirect examination, the State addressed Duenas's question:

> [THE STATE]: And [H.A. and K.L. have] told a fib or two in their day?
> [HEATHER]: Yeah.
> [THE STATE]: Okay. Now, if they would be not forthcoming with you, would it be about smaller stuff or would it be about a massive issue like this?
> [HEATHER]: I think it would be a smaller—I—something like this is not something that's just made up or something that they're going to lie about.

2 VRP at 159-60. Duenas did not object. Following closing arguments, the trial court instructed the jury that it was the sole judge of a witness's credibility and of the weight of that witness's testimony.

A.    *Testimony Regarding H.A.'s and K.L.'s Credibility*

Duenas argues that Heather's testimony that H.A. and K.L. would not lie about an issue like sexual assault was improper opinion testimony regarding H.A.'s and K.L.'s credibility. Because Duenas did not preserve this claim of error for appeal, we do not review it.

Heather testified that H.A. and K.L. generally did not lie about "massive" issues like sexual assault allegations. Because Duenas did not object, he must show that this issue is a manifest error of constitutional magnitude.

However, Heather did not expressly state that she believed H.A. and K.L. were telling the truth or that they did not lie. Further, Duenas does not show that the trial court's jury instruction failed to cure any resulting prejudice. Accordingly, Duenas fails to show that the trial court

10

committed a manifest constitutional error by admitting Heather's testimony, and we do not review his claim of error.

B.     *Testimony Regarding Duenas's Guilt*

Duenas argues that Heather's testimony that H.A. and K.L. would not lie about an issue like sexual assault was improper opinion testimony regarding Duenas's guilt. Because Duenas did not preserve this claim of error for appeal, we do not review it.

Heather's testimony was not an explicit or near explicit opinion on Duenas's guilt. Consequently, the admission of her testimony was not a manifest error of constitutional magnitude. Thus, Duenas has not preserved this claim for appeal, and we do not review it.

II.  PROSECUTORIAL MISCONDUCT

Duenas argues that the prosecutor committed flagrant and ill-intentioned misconduct by (a) eliciting improper opinion testimony from Heather regarding H.A.'s and K.L.'s credibility and Duenas's guilt, (b) arguing facts not in evidence, (c) making improper appeals to the jury's passions and prejudices, (d) vouching for H.A.'s and K.L.'s credibility, and (e) disparaging defense counsel. We hold that most of the claimed misconduct was not improper and that Duenas waived the remaining issues.

To establish prosecutorial misconduct, a defendant bears the burden of proving the prosecutor's conduct was both improper and prejudicial. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011).

Where, as here, a defendant fails to object to alleged prosecutorial misconduct, he is deemed to have waived any error unless he shows the misconduct "was so flagrant and ill intentioned that an instruction [from the trial court] could not have cured the resulting prejudice."

*State v. Emery*, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012). In order to meet this heightened standard, the defendant must show that "(1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" 174 Wn.2d at 761 (quoting *Thorgerson*, 172 Wn.2d at 455).

A.      *Eliciting Impermissible Opinion Testimony*

Duenas argues that the prosecutor committed misconduct by eliciting improper opinion testimony from Heather regarding H.A.'s and K.L.'s credibility and Duenas's guilt. His argument is based on the same exchange occurring between the prosecutor and Heather discussed above. We hold that the prosecutor's conduct was not improper.

A prosecutor commits misconduct when his questioning seeks to compel a witness's opinion as to whether another witness is telling the truth. *State v. Jerrels*, 83 Wn. App. 503, 507, 925 P.2d 209 (1996). Testimony regarding another witness's credibility is prejudicial because weighing the credibility of a witness is the province of the jury. *Demery*, 144 Wn.2d at 759.

During cross-examination, Heather affirmatively responded to Duenas's question regarding whether H.A. and K.L. lie. The prosecutor's questions on redirect examination sought to explore the types of matters H.A. and K.L. lied about. The prosecutor did not ask Heather whether H.A. and K.L. were telling the truth. Accordingly, the prosecutor did not seek to compel Heather's opinion about whether H.A. and K.L. were telling the truth. As a result, Duenas fails to show that the prosecutor's question was improper.

B.      *Arguing Facts Not in Evidence*

Duenas also argues that the prosecutor committed misconduct by arguing facts not in evidence by stating that Duenas "raped and molested his soon-to-be stepchildren." Br. of Appellant at 27. We hold that the prosecutor's conduct was not improper.

We review a prosecutor's statements during closing argument in the context of the total argument, the issues in the case, the evidence addressed in closing argument, and the jury instructions. *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003). It is improper for a prosecutor to assert during closing argument facts not admitted as evidence during trial. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 705, 286 P.3d 673 (2012). We accord a prosecutor some latitude to argue reasonable inferences from facts in evidence. *Dhaliwal*, 150 Wn.2d at 577.

During closing argument, the prosecutor stated, "The defendant raped and molested his soon-to-be stepchildren." 4 VRP at 386. Later, the prosecutor noted that one count of first degree child rape and two counts of first degree child molestation pertained to H.A.; the remaining third degree child molestation count related to K.L.

Duenas argues that the prosecutor asserted facts not in evidence during closing argument because there was no evidence presented at trial that Duenas raped both H.A. and K.L. However, viewing the statement in the context of the total argument and the issues in the case, it is clear that the prosecutor was not arguing that Duenas was also guilty of child rape of K.L. The prosecutor did not argue that Duenas was also guilty of child rape of K.L. when addressing the evidence and charges, and he did not suggest that Duenas committed uncharged acts. Accordingly, the prosecutor's statement was proper.

C.    *Improper Appeals to the Jury's Passions and Prejudices*

Duenas also argues that the prosecutor committed misconduct by making improper appeals to the jury's passions and prejudices. Specifically, Duenas argues the prosecutor made improper appeals to the jury's passions and prejudices by (1) arguing that the jury needed to prevent the destruction of society, (2) providing a first person narrative of Duenas's thought process, (3) encouraging the jury to have an emotional reaction to the testimony at trial, and (4) inviting the jury to consider the emotional impact of the crimes on Heather's family. We hold that most of the claimed misconduct was not improper and that Duenas waived the remaining issues.

A prosecutor has wide latitude to draw and express reasonable inferences from the evidence during closing argument. *State v. Perez-Mejia*, 134 Wn. App. 907, 916, 143 P.3d 838 (2006). However, a prosecutor has a duty to seek verdicts free from appeals to the jury's passions or prejudices. 134 Wn. App. at 915. Arguments that are intended to "'incite feelings of fear, anger, and a desire for revenge' that are 'irrelevant, irrational, and inflammatory' are improper appeals to passion or prejudice." *In re Pers. Restraint of Cross*, 180 Wn.2d 664, 724-25, 327 P.3d 660 (2014) (internal quotation marks omitted) (quoting *State v. Elledge*, 144 Wn.2d 62, 85, 26 P.3d 271 (2001)).

1. Destruction of Society

Duenas argues that the prosecutor made improper appeals to the jury's passions and prejudices by arguing that the jury needed to protect the community. We hold that this conduct was not improper.

Generally, appeals for the jury to act as a conscience of the community are permissible unless they are specifically designed to inflame the jury. *State v. Davis*, 141 Wn.2d 798, 873, 10 P.3d 977 (2000). During closing argument, the prosecutor stated:

> A lot of us go through our daily routines and our daily lives and we don't deal with child sex abuse or don't face it. And that's a very good thing. It would not be a good society, if we were all dealing with that on a daily basis.

4 VRP at 386.

In arguing that it would not be a good society if jurors dealt with sexual assault on a daily basis, the prosecutor did not ask the jury to convict Duenas to protect their society. Rather, the prosecutor made a generalization about society. Further, the argument cannot be said to have been specifically designed to inflame the passions and prejudices of the jury because it was not inflammatory, and the prosecutor did not make the statement in an effort to seek a conviction on the basis of fear and anger. Duenas fails to show that the prosecutor's argument was improper.

2. Duenas's Thought Process

Duenas also argues that the prosecutor made improper appeals to the jury's passions and prejudices by providing a first person narrative of his thought process. We hold that this conduct was not improper.

In discussing the third degree child molestation of K.L. charge, the prosecutor said:

> Well, we can't get inside the defendant's head, but from the evidence, I would argue that what's going on is a couple of possibilities. One, he's testing the waters. He's rubbing her calf and seeing, okay, A. Is she awake? And B. Am I going to get some reaction?

4 VRP at 397-98.

Duenas relies on *State v. Pierce*, 169 Wn. App. 533, 280 P.3d 1158 (2012), to support his contention that the prosecutor's account of his thought process amounted to misconduct. In

15

*Pierce*, the prosecutor stepped into the shoes of the defendant during closing argument by repeatedly presenting the thought process of the defendant from the first person point of view. 169 Wn. App. at 554-55. We determined the statements served no purpose other than to inflame the jury's passions and prejudices by portraying the defendant as an impatient, amoral drug addict who refused to work. 169 Wn. App. at 554. We noted that the prosecutor could have asked the jury to infer this view from the facts but went beyond his wide latitude in drawing inferences from evidence by effectively testifying about the defendant's particular thoughts. 169 Wn. App. at 555. We concluded that the cumulative effect of these statements, as well as other improper statements during closing argument, prejudiced the defendant. 169 Wn. App. at 556.

*Pierce* is factually distinguishable. The prosecutor's statements here do not rise to the same level of impropriety as in *Pierce*. Here, the prosecutor argued that the jury could infer from the evidence presented at trial that Duenas was testing his boundaries, but he did not explicitly attribute amoral or criminal thoughts to Duenas. As a result, the prosecutor's argument was not improper.

3. Emotional Reaction to Testimony

Duenas also argues that the prosecutor made improper appeals to the jury's passions and prejudices by encouraging the jury to have an emotional reaction to the evidence presented at trial. We hold that Duenas waived this issue on appeal.

The State commits misconduct by asking the jury to convict based on emotions instead of the evidence. *State v. Fuller*, 169 Wn. App. 797, 821, 282 P.3d 126 (2012). While a prosecutor is not barred from referring to the heinous nature of a crime, the prosecutor nevertheless retains a duty to ensure a verdict is free from prejudice. *Pierce*, 169 Wn. App. at 553.

During closing argument, the prosecutor addressed the third degree child molestation of K.L. charge. The prosecutor noted that K.L. described the offense in a unique and detailed way, and he argued that the amount of detail "should send some shivers down some of you." 4 VRP at 398. Duenas did not object.

We assume that the prosecutor's comment that K.L.'s account "should send some shivers down some of you" was improper. Nonetheless, we note that it was a brief and isolated statement. Duenas fails to show that the statement was so flagrant and ill-intentioned that an instruction could not have cured any resulting prejudice. Accordingly, Duenas has waived this issue.

### 4. Impact on Heather's Family

Duenas also argues that the prosecutor made improper appeals to the jury's passions and prejudices by inviting the jury to consider the emotional impact of the crimes on Heather's family. We hold that Duenas waived this issue.

In concluding his closing argument, the prosecutor stated:

We have the corroboration, we have people being consistent, we have a lack of motivation to lie.
But more importantly, we also have the impact of evidence. . . .
. . . .
The impact that this has had on everybody involved is very real. What the defendant did to these children is very real and it has been proven to you. I'd ask that you come back guilty.

4 VRP at 411-13. Duenas did not object.

The prosecutor's discussion of the allegations' impact on Heather and her family was irrelevant to the charged offenses and constituted an appeal to the jury's passions and prejudices. However, the prosecutor only briefly referred to the allegations' impact and did not elaborate on

the type of impact caused or its effect on H.A., K.L., or Heather.  Duenas cannot show that the prosecutor's statement had a substantial likelihood of affecting the jury's verdict.  Accordingly, the prosecutor's statement was not so flagrant and ill-intentioned that an instruction could not have cured any resulting prejudice.  Thus, Duenas waived this issue.

D.      *Vouching for H.A.'s and K.L.'s Credibility*

Duenas also that argues the prosecutor committed misconduct by vouching for H.A.'s and K.L.'s credibility.  We hold that the prosecutor's conduct was not improper.

A prosecutor commits misconduct by vouching for a witness's credibility.  *State v. Coleman*, 155 Wn. App. 951, 957, 231 P.3d 212 (2010).  Improper vouching may occur when a prosecutor (1) expresses his personal belief as to the veracity of a witness or (2) argues that evidence not presented at trial supports the witness's testimony.  *Thorgerson*, 172 Wn.2d at 443.  Despite this, misconduct only occurs when it is clear and unmistakable that the prosecutor is not arguing an inference from the evidence but is expressing a personal opinion.  *State v. McKenzie*, 157 Wn.2d 44, 53, 134 P.3d 221 (2006).

During closing argument, the prosecutor stated that sexual assault affects kids every day and that "it happened to [K.L.] and it happened to [H.A.]."  4 VRP at 387.   In describing the third degree child molestation of K.L. charge, the prosecutor said that K.L. discussed the offense in a unique way and with "detail that I would argue doesn't come out if somebody isn't being truthful about what happened."  4 VRP at 398.

Duenas argues that the prosecutor attempted to bolster H.A.'s and K.L.'s credibility by stating that sexual abuse happens to kids every day.  However, in the context of the entire argument, the prosecutor did not argue that because sexual abuse happens to kids every day, H.A.

and K.L. were telling the truth. Moreover, the prosecutor did not express his personal opinion regarding H.A.'s and K.L.'s credibility. Accordingly, Duenas does not show that the prosecutor's statement was improper.

Duenas also argues that the prosecutor expressed his personal belief regarding K.L.'s credibility in stating that the details she gave in describing the assault only come out if someone is being truthful. Defense counsel attacked K.L.'s credibility throughout trial. The prosecutor responded to defense counsel's argument by arguing that evidence could support the jury's conclusion that K.L. was credible. As a result, the prosecutor did not express his personal opinion that K.L. was credible or that her testimony was truthful. Accordingly, the prosecutor's statement was not improper.

E.    *Disparaging Defense Counsel*

Duenas also argues that the prosecutor committed misconduct by disparaging defense counsel in implying that defense counsel was being misleading. We hold that Duenas waived this issue.

It is improper for a prosecutor to disparagingly comment on defense counsel's role or challenge defense counsel's integrity. *Thorgerson*, 172 Wn.2d at 465. Disparaging defense counsel, however, is significantly different from disparaging defense counsel's argument. *See Thorgerson*, 172 Wn.2d at 451.

In closing argument, defense counsel attacked H.A.'s and K.L.'s credibility and argued that they fabricated the sexual assault allegations. During his rebuttal argument, the prosecutor stated that it was "absolutely egregious" for defense counsel to suggest that H.A. and K.L. were lying. 4 VRP at 424. Duenas did not object.

The prosecutor continued and addressed defense counsel's argument that the State failed to present physical evidence of sexual assault. The prosecutor stated that "the defense['s] argument can be effective, but it's misleading because I don't have to put on a perfect case." 4 VRP at 430.

Duenas did not object to any of the prosecutor's statements. Assuming without deciding that the prosecutor's statements disparaged defense counsel, Duenas cannot show that the prosecutor's statements had a substantial likelihood of affecting the jury's verdict. H.A.'s and K.L.'s testimony was consistent throughout trial, and the prosecutor's statement reiterated that physical evidence was not necessary for a conviction. Accordingly, Duenas fails to show that the statements were so flagrant and ill-intentioned that an instruction could not have cured any resulting prejudice. Thus, Duenas waived this issue.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Duenas also argues that defense counsel was ineffective by (a) failing to object to Heather's impermissible opinion testimony regarding H.A.'s and K.L.'s credibility and Duenas's guilt, (b) failing to renew his child hearsay objection following Heather's inconsistent trial testimony regarding H.A.'s allegations, and (c) failing to object to the prosecutor's purported misconduct during closing argument and by failing to request a curative instruction. We disagree.

We review ineffective assistance of counsel claims de novo. *State v. Brown*, 159 Wn. App. 366, 370, 245 P.3d 776, *review denied*, 171 Wn.2d 1025 (2011). In asserting an ineffective assistance of counsel claim, a defendant must overcome a strong presumption of effective representation. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

20

The defendant must show that defense counsel's representation was deficient and that defense counsel's deficient representation prejudiced him. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). Defense counsel's performance is deficient if it falls below an objective standard of reasonableness and was not based on a tactical decision. *State v. Beasley*, 126 Wn. App. 670, 686, 109 P.3d 849 (2005). Prejudice occurs when, but for defense counsel's deficient performance, there is a reasonable probability that the outcome at trial would have been different. 126 Wn. App. at 686.

A.    *Failure To Object to Impermissible Opinion Testimony*

Duenas argues that defense counsel was ineffective by failing to object to Heather's impermissible opinion testimony regarding H.A.'s and K.L.'s credibility and Duenas's guilt. We disagree because Duenas cannot show that defense counsel's performance prejudiced him.

To prove that defense counsel was ineffective for failing to challenge the admission of evidence, a defendant must show that (1) the failure to object fell below prevailing professional norms, (2) the proposed objection would likely have succeeded, and (3) the result of the trial would have been substantially different had the objection succeeded. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 714, 101 P.3d 1 (2004). Counsel's failure to object to testimony cannot prejudice a defendant unless the trial court would have ruled that the testimony was inadmissible. *See McFarland*, 127 Wn.2d at 337.

During cross-examination, Duenas asked Heather whether H.A. and K.L. lied. Heather responded in the affirmative. On redirect, the State asked if H.A. and K.L. "would be not forthcoming . . . about smaller stuff or . . . about a massive issue like [sexual assault]?" 2 VRP at

159. Heather stated that "this is not something that's just made up or something that [H.A. and K.L. are] going to lie about."2 VRP at 159-60. Duenas did not object.

Duenas argues that he received ineffective assistance of counsel because defense counsel failed to object to Heather's impermissible opinion testimony. However, as discussed above, Heather did not expressly state that she believed H.A. and K.L. were telling the truth or that Duenas was guilty. As a result, Duenas fails to show that Heather's testimony constituted impermissible opinion testimony, and the trial court likely would have overruled any objection to that testimony. Because Duenas cannot show that Heather's testimony was inadmissible, or that the trial court would have sustained an objection to Heather's testimony, defense counsel's failure to object to that testimony was not prejudicial. Thus, Duenas's claim fails.

B.      *Failure To Renew Child Hearsay Objection*

Duenas also argues that defense counsel was ineffective by failing to renew his child hearsay objection following Heather's inconsistent trial testimony. We disagree because Duenas cannot show that defense counsel's performance prejudiced him.

To prove that defense counsel was ineffective for failing to object, a defendant must show that (1) the failure to object fell below prevailing professional norms, (2) the proposed objection would likely have succeeded, and (3) the result of the trial would have been substantially different had the objection succeeded. *Davis*, 152 Wn.2d at 714.

Before trial, the State moved to admit hearsay statements H.A. made to Heather. At a pretrial hearing regarding the admissibility of H.A.'s hearsay statements, Heather stated that there had not been any major issues between H.A. and Duenas. Heather also said that H.A. was

reluctant to tell her about the sexual assault and that she asked H.A. open-ended questions to learn what had occurred.

The trial court ruled that H.A.'s hearsay statements would be admissible. The court determined that H.A. did not have a motive to lie because she reluctantly told Heather about the abuse and that H.A.'s statements provided sufficient indicia of reliability because H.A. was fairly consistent in her accounts of the abuse. The trial court also took note that Heather avoided making suggestive answers in asking H.A. about the abuse.

At trial, Heather testified that she asked H.A. a series of leading questions when she first confronted H.A. about the sexual assault allegations. Duenas did not object. Heather also testified that H.A. had a bad attitude in the months leading up to the allegations and that H.A. mostly directed her attitude toward Duenas. Duenas did not object.

The trial court determined that H.A.'s hearsay statements provided sufficient indicia of reliability because H.A. did not have a strong motive to lie and because her allegations were fairly consistent. Although Heather testified about asking H.A. leading questions and testified that H.A. had a bad attitude toward Duenas, her testimony still showed that H.A. reluctantly told her about the abuse and that H.A.'s accounts of the abuse were fairly consistent. Accordingly, Duenas cannot show that had defense counsel renewed his objection to H.A.'s hearsay statements, the objection would have been successful. Therefore, Duenas cannot show that defense counsel's failure to renew the objection prejudiced him, and his claim fails.

C.     *Failure To Object to Prosecutorial Misconduct*

Duenas also argues that defense counsel was ineffective by failing to object to the prosecutor's purported misconduct during closing argument and by failing to request a curative

instruction. We disagree because Duenas cannot show that his defense counsel's performance prejudiced him.

As discussed above, most of the claimed prosecutorial misconduct was not improper. Consequently, we turn to Duenas's claims that defense counsel was ineffective for failing to object to the prosecutor's statements during closing argument that encouraged an emotional reaction to K.L.'s testimony, discussed the impact of the crimes on Heather's family, and disparaged defense counsel.

Even assuming defense counsel's performance was deficient, Duenas cannot show a reasonable probability that, but for defense counsel's errors, the jury's verdict would have been different. The prosecutor's statements encouraging an emotional reaction, discussing the crimes' impact, and disparaging defense counsel were brief and isolated. The statements were not central to the prosecutor's case, and H.A.'s and K.L.'s testimony provided compelling evidence of Duenas's guilt. Accordingly, Duenas fails to demonstrate that defense counsel's performance was prejudicial, and his claim of ineffective assistance of counsel fails.

IV. CUMULATIVE ERROR

Duenas also argues that the cumulative effect of the trial court's errors deprived him of a fair trial. We disagree.

The cumulative error doctrine applies when a trial is affected by several errors that, standing alone, may not be sufficient to justify reversal. *State v. Greiff*, 141 Wn.2d 910, 929, 10 P.3d 390 (2000). Cumulative error requires reversal when the combination of errors denies the defendant a fair trial. 141 Wn.2d at 929. Reversal is not required when there are few or no

errors and the errors, if any, have little to no effect on the outcome of the trial. *State v. Weber*, 159 Wn.2d 252, 279, 149 P.3d 646 (2006).

Here, the only errors we consider involve prosecutorial misconduct. As discussed above, it was error for the prosecutor to encourage an emotional reaction to K.L.'s testimony, discuss the emotional impact of the crimes on Heather's family, and disparage defense counsel during closing argument. However, the combined effect of these errors do not require reversal. The prosecutor's statements resulted in little prejudice as they were brief and isolated statements that occurred during the prosecutor's lengthy closing argument. Moreover, H.A.'s and K.L.'s testimony provided the jury with an abundance of evidence of Duenas's guilt, and the jury was properly instructed on how to weigh that evidence. The prosecutor's statements did not undermine Duenas's convictions or his right to a fair trial.

As a result, Duenas fails to establish that he was prejudiced by the alleged errors, and he does not show how these combined alleged errors affected the outcome of his trial. Because the alleged errors had little to no effect on the outcome of his trial, we hold that Duenas's cumulative error claim fails and does not warrant reversal.

## V. DOUBLE JEOPARDY

Duenas also argues that his convictions for one count of first degree child rape of H.A. and one count of first degree child molestation of H.A. violated the prohibition against double jeopardy. The State concedes error. We reject the State's concession and affirm Duenas's

conviction for one count of first degree child rape and one count of first degree child molestation.[9]

Double jeopardy claims are questions of law we review de novo. *State v. Hughes*, 166 Wn.2d 675, 681, 212 P.3d 558 (2009). The double jeopardy clause of the Fifth Amendment to the United States Constitution provides that a person may not be subject for the same offense to be twice put in jeopardy of life and limb. U.S. CONST. amend. V. Similarly, the Washington State Constitution states, "No person shall be . . . twice put in jeopardy for the same offense." WASH. CONST. art. I, § 9.

A trial court that enters multiple convictions for the same offense violates double jeopardy. *In re Pers. Restraint of Francis*, 170 Wn.2d 517, 523, 242 P.3d 866 (2010). However, "if each count arises from a separate and distinct act, the defendant is not potentially exposed to multiple punishments for a single act." *State v. Peña Fuentes*, 179 Wn.2d 808, 824, 318 P.3d 257 (2014). "Where a defendant's act supports charges under two criminal statutes, a court weighing a double jeopardy challenge must determine whether, in light of legislative intent, the charged crimes constitute the same offense." *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 815, 100 P.3d 291 (2004). Where, as here, the relevant statutes do not expressly disclose the legislature's intent, we apply the *Blockburger*[10] "same evidence" test.[11] 152 Wn.2d at 820.

---

[9] We are not bound by an erroneous concession related to an issue of law. *In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 875, 50 P.3d 618 (2002).

[10] *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932).

[11] The statutory language of both RCW 9A.44.073 and RCW 9A.44.083 does not expressly speak to multiple punishments for the same act.

Under *Blockburger*, we presume that the legislature did not intend to punish criminal conduct twice when the evidence required to support a conviction for one of the charged crimes would have been sufficient to support a conviction for the other charged crime. 152 Wn.2d at 820. Accordingly, when a defendant receives multiple convictions for offenses that are identical both in fact and in law, he cannot be punished separately absent clear legislative intent to the contrary. *Peña Fuentes*, 179 Wn.2d at 824; *State v. Freeman*, 153 Wn.2d 765, 776, 108 P.3d 753 (2005). "A 'defendant's double jeopardy rights are violated if he or she is convicted of offenses that are identical both in fact and in law.'" *Peña Fuentes*, 179 Wn.2d at 824 (quoting *State v. Calle*, 125 Wn.2d 769, 777, 888 P.2d 155 (1995)). If each offense includes elements not included in the other offense, the offenses are different and multiple convictions do not violate double jeopardy. 179 Wn.2d at 824. Additionally, if each count arises from a separate and distinct act, the defendant is not exposed to multiple convictions for the same criminal act. 179 Wn.2d at 824.

First degree child rape requires proof of "sexual intercourse" with a child under the age of 12. RCW 9A.44.073(1). Sexual intercourse can be proven by evidence of any form of penetration. RCW 9A.44.010(1)(a). First degree child molestation requires proof of "sexual contact" with a child under the age of 12. RCW 9A.44.083(1). "Sexual contact" refers to "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party." RCW 9A.44.010(2).

The State charged Duenas with one count of first degree child rape of H.A. (count I) and two counts of first degree child molestation of H.A. (counts II and III). At trial, H.A. testified

27

that Duenas touched her genitals and digitally raped her on the same day. H.A. also testified that

Duenas touched her genitals on one another occasion.

During closing argument, the State argued:

Now, both Counts 1 and 2 deal with the same incident, so I want to be clear on that. So [H.A.] described two incidents. The first incident, which involved the defendant putting his fingers in her vagina, and that is what's covered in Counts 1 and 2. So you have two different crimes charged at the same incident. And to help guide you on this, you have an instruction that says you're to treat each count separately.

4 VRP at 388-89.

The jury was instructed that a separate crime was charged in each count and that it was to

decide each count separately. The jury was also instructed on the definition of sexual intercourse

and child molestation. The jury found Duenas guilty of one count of first degree child rape and

two counts of first degree child molestation.

Duenas argues that his convictions for first degree child rape and first degree child

molestation violate double jeopardy because the convictions are based on the same act.

However, this argument was rejected in *State v. Land*, 172 Wn. App. 593, 295 P.3d 782, *review*

*denied*, 177 Wn.2d 1016 (2013). The *Land* court stated:

Where the only evidence of sexual intercourse supporting a count of child rape is evidence of penetration, rape is not the same offense as child molestation. And this is so even if the penetration and molestation allegedly occur during a single incident of sexual contact between the child and the older person. The touching of sexual parts for sexual gratification constitutes molestation up until the point of actual penetration; at that point, the act of penetration alone, regardless of motivation, supports a separately punishable conviction for child rape.

172 Wn. App. at 600.

The State concedes error and argues that because the prosecutor did not clarify that first

degree child rape and first degree child molestation were separate acts in his closing argument,

28

Duenas's convictions violate double jeopardy. The State appears to base its concession on the rule announced by the Washington Supreme Court in *State v. Mutch*, 171 Wn.2d 646, 254 P.3d 803 (2011). Under *Mutch*, there is a double jeopardy violation if, considering the evidence, arguments, and instructions, it is not clear that it was "'*manifestly apparent* to the jury that the State [was] not seeking to impose multiple punishments for the same offense' and that each count was based on a separate act." 171 Wn.2d at 664 (alterations in original).

At trial, H.A. testified that Duenas touched her genitals and digitally raped her. The court instructed the jury that it must decide each count separately, and the court defined the elements of both first degree child rape and first degree child molestation. In closing argument, the prosecutor stated that one count of first degree child rape and one count of first degree child molestation dealt with the same incident. While the prosecutor referred to the incident as the time when H.A. was digitally raped, he did not argue that evidence of penetration satisfied both counts. Instead, he emphasized that two different crimes were charged for this incident and that the jury must consider the charges separately. Considering the entire record in this case, no double jeopardy violations occurred under the rule in *Mutch*. Despite the prosecutor's conflated closing argument, the evidence and jury instructions made it manifestly apparent to the jury that each count involved distinct acts of sexual assault, even if the acts were part of the same incident.

First degree child rape requires proof of sexual intercourse, but first degree child molestation does not. *State v. French*, 157 Wn.2d 593, 611, 141 P.3d 54 (2006). Conversely, first degree child molestation requires proof of sexual contact, but first degree child rape does not. 157 Wn.2d at 611. As first degree child rape and first degree child molestation each include

29

elements not included in the other offense, the offenses are separate and are different in law. 157 Wn.2d at 611. Further, H.A. testified that Duenas both touched her genitals and digitally raped her. Accordingly, the offenses are different in fact. While the penetration and molestation occurred during a single incident, the first degree child rape charge was not the same as the first degree child molestation charge. *Land*, 172 Wn. App. at 600. Accordingly, the charged crimes were different offenses. Therefore, we reject the State's concession and hold that Duenas's first degree child rape and first degree child molestation convictions do not violate double jeopardy.

## VI. UNAUTHORIZED SENTENCE

Duenas also argues that the trial court erred by imposing a sentence for third degree child molestation that exceeded the statutory maximum. The State concedes error. We accept the State's concession.

A court's sentencing authority is limited to that granted by statute. *In re Postsentence Review of Combs*, 176 Wn. App. 112, 117, 308 P.3d 763 (2013). Whether a sentencing court has exceeded its statutory authority is a question of law we review de novo. *State v. Mann*, 146 Wn. App. 349, 357, 189 P.3d 843 (2008). If a court exceeds its sentencing authority, it commits reversible error. *State v. Winborne*, 167 Wn. App. 320, 330, 273 P.3d 454 (2012).

Under RCW 9.94A.505, a court exceeds its sentencing authority if it imposes a sentence that exceeds the statutory maximum for the crime. Accordingly, a sentencing court is required to reduce a community custody term "whenever an offender's standard range term of confinement in combination with the term of community custody exceeds the statutory maximum for the crime." RCW 9.94A.701(9).

Duenas was sentenced to 54 months of incarceration and 36 months of community custody for third degree child molestation, a class C felony. RCW 9A.44.089(2). The maximum sentence authorized by statute for a class C felony is 60 months. RCW 9A.20.021(1)(c). As a result, the trial court was required to reduce Duenas's 36-month community custody term so that his standard range term of confinement and term of community custody did not exceed 60 months. The trial court failed to do so. The State concedes Duenas's sentence exceeded the statutory maximum for third degree child molestation. We accept the State's concession and remand for amendment of the community custody term.

VII. COMMUNITY CUSTODY CONDITIONS

Duenas also argues that the trial court abused its discretion in ordering that Duenas undergo plethysmograph testing and imposed an unconstitutionally vague condition by prohibiting him from entering into a relationship with another with minor aged children. The State concedes that the trial court abused its discretion in ordering that Duenas submit to plethysmograph testing. We accept the State's concession regarding the plethysmograph testing condition. However, we affirm the condition prohibiting Duenas from entering into a relationship with another with minor aged children.

A.     *Plethysmograph Testing*

Duenas argues that the trial court abused its discretion in ordering plethysmograph testing as a community custody condition. The State concedes error. We accept the State's concession.

A trial court is permitted to impose "crime-related prohibitions" and affirmative conditions as part of a felony sentence. Former RCW 9.94A.505(8) 2002. We review the imposition of a community custody condition for abuse of discretion and will reverse only if the

31

trial court's decision is manifestly unreasonable or based on untenable grounds. *Warren*, 165 Wn.2d at 32.

A trial court is authorized to impose community custody conditions that monitor compliance. *State v. Riles*, 135 Wn.2d 326, 342-43, 957 P.2d 655 (1998), *abrogated on other grounds by State v. Sanchez Valencia*, 169 Wn.2d 782, 239 P.3d 1059 (2010). However, "plethysmograph testing does not serve a monitoring purpose," and the testing implicates a defendant's due process right to be free from bodily intrusions. 135 Wn.2d at 345; *Land*, 172 Wn. App. at 605. Although plethysmograph testing may be ordered by a qualifying treatment provider to treat sex offenders, it is inappropriate "as a routine monitoring tool subject only to the discretion of a community corrections officer." *Land*, 172 Wn. App. at 605.

The trial court ordered that Duenas submit to plethysmography exams at the direction of the community corrections officer. Because plethysmograph testing does not serve a monitoring purpose and is inappropriate "as a routine monitoring tool subject only to the discretion of a community corrections officer," the trial court's decision to impose the plethysmograph testing condition was manifestly unreasonable. *Land*, 172 Wn. App. at 605. Accordingly, the trial court abused its discretion in imposing the condition, and we remand with instructions to strike the plethysmograph testing community custody condition.

B. *Relationship with Another with Minor Children*

Duenas also argues the trial court erred in imposing community custody conditions because the condition prohibiting him from entering into a relationship with another with minor aged children is unconstitutionally vague. We disagree.

We review vagueness challenges to community custody conditions under an abuse of discretion standard. *Sanchez Valencia*, 169 Wn.2d at 793. We will reverse a sentencing condition if it is manifestly unreasonable. *State v. Bahl*, 164 Wn.2d 739, 753, 193 P.3d 678 (2008). The imposition of an unconstitutional condition is manifestly unreasonable. 164 Wn.2d at 753.

The vagueness doctrine under the Fourteenth Amendment and article I, section 3 of the Washington Constitution requires that citizens have fair warning of prohibited conduct. 164 Wn.2d at 752. Community custody provisions that fail to provide ascertainable standards of guilt to protect against arbitrary enforcement are unconstitutionally vague. 164 Wn.2d at 752. However, "'a community custody provision is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which his actions would be classified as prohibited conduct.'" *Sanchez Valencia*, 169 Wn.2d at 793 (internal quotation marks omitted) (quoting *State v. Sanchez Valencia*, 148 Wn. App. 302, 321, 198 P.3d 1065 (2009)).

Community custody provisions may require defendants to "perform affirmative conduct reasonably related to the circumstances of the offense, the offender's risk of reoffending, or the safety of the community." RCW 9.94A.703(3)(d). A defendant may also be ordered to refrain from direct or indirect contact with a specific class of individuals. RCW 9.94A.703(3)(b). The trial court ordered that Duenas "not enter into a relationship with anyone who has minor aged children residing in or visiting their home without the approval of the therapist and the [community corrections officer]." CP at 57.

33

Duenas argues that the sentencing condition does not provide him with adequate notice of what kind of relationships are prohibited. However, Division One of this court rejected a similar argument in *State v. Kinzle*, 181 Wn. App. 774, 785, 326 P.3d 870 (2014). The *Kinzle* court noted that the trial court has discretion to order a defendant to refrain from contact with a specified class of individuals. 181 Wn. App. at 785. The *Kinzle* court concluded that because the defendant contacted the victims through a social relationship with their parents, a sentencing condition preventing him from dating women and forming relationships with families with minor children was reasonably crime-related and necessary to protect the public and, therefore, not unconstitutionally vague. 181 Wn. App. at 785.

Like in *Kinzle*, Duenas came into contact with H.A. and K.L. through his relationship with their mother. The community custody condition prevents Duenas from forming any relationship with another with minor children without approval. As a result, the condition is reasonably crime-related and necessary to protect the public. Further, "the vagueness doctrine is not concerned with overreach; it is concerned with arbitrary enforcement resulting from uncertainty in terms." *State v. Smith*, 130 Wn. App. 721, 728, 123 P.3d 896 (2005). The condition does not rely on a community corrections officer to give meaning to the term "relationship." Instead, Duenas's therapist and community corrections officer determine which relationships are permissible. As a result, the condition is not subject to arbitrary enforcement. Moreover, the sentencing condition is not unconstitutionally vague merely because Duenas cannot predict with exact certainty which relationships will be prohibited by the condition. *Sanchez Valencia*, 169 Wn.2d at 793. Accordingly, Duenas does not show that the community

34

custody condition is unconstitutionally vague and therefore manifestly unreasonable. Thus, the trial court did not abuse its discretion in imposing the community custody condition.

VIII. APPELLATE COSTS

Duenas asks that we refrain from awarding appellate costs against him because he is indigent. A commissioner of this court can consider whether to award appellate costs in due course under the newly revised RAP 14.2 if the State files a cost bill and if Duenas objects to that cost bill.

STATEMENT OF ADDITIONAL GROUNDS

In his SAG, Duenas claims the prosecutor committed misconduct by (1) vouching for H.A.'s credibility, (2) making improper appeals to the jury's passions and prejudices, (3) impugning and disparaging the role and integrity of defense counsel, (4) minimizing the burden of proof, and (5) misrepresenting the role of the jury. Duenas already raised claims on appeal regarding the prosecutor's misconduct in vouching H.A.'s credibility, making improper appeals to the jury's passions and prejudices, and impugning and disparaging the role and integrity of defense counsel. We need not reconsider issues already raised and argued by defense counsel on appeal. *State v. Meneses*, 149 Wn. App. 707, 715-16, 205 P.3d 916 (2009), *aff'd in part*, 169 Wn.2d 586, 238 P.3d 495 (2010). We address Duenas's remaining claims below, and we conclude that they lack merit.

I. PROSECUTORIAL MISCONDUCT

Duenas claims that the prosecutor committed misconduct by (a) minimizing the burden of proof during closing argument and (b) misrepresenting the role of the jury. His claims lack merit.

To establish prosecutorial misconduct, a defendant bears the burden of proving the prosecutor's conduct was both improper and prejudicial. *Thorgerson*, 172 Wn.2d at 442. If a defendant meets this burden, we may reverse the defendant's conviction. *Thorgerson*, 172 Wn.2d at 443

If a defendant establishes the prosecutor's conduct was improper, we must determine whether he was prejudiced. *Emery*, 174 Wn.2d at 760. Where, as here, a defendant fails to object to alleged prosecutorial misconduct, he is deemed to have waived any error unless he shows the misconduct "was so flagrant and ill intentioned that an instruction [from the trial court] could not have cured the resulting prejudice." 174 Wn.2d at 760-61. In order to meet this heightened standard, the defendant must show that "(1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" 174 Wn.2d at 761 (quoting *Thorgerson*, 172 Wn.2d at 455).

A.      *Minimizing the Burden of Proof*

Duenas claims that the prosecutor committed misconduct by minimizing the burden of proof in arguing that if the jury had an abiding belief in the charges, the charges were proved beyond a reasonable doubt. This claim lacks merit.

A prosecutor's argument misstating, minimizing, or trivializing the law regarding the burden of proof can be improper. *State v. Johnson*, 158 Wn. App. 677, 685, 243 P.3d 936 (2010), *review denied*, 171 Wn.2d 1013, 249 P.3d 1029 (2011). Due process requires that the State bear the burden of proving each element of a crime beyond a reasonable doubt. *Warren*, 165 Wn.2d at 26.

36

In *State v. Osman*, 192 Wn. App. 355, 375, 366 P.3d 956 (2016), the court addressed whether defense counsel's definition of the term "abiding belief" misstated the State's burden of proof. The *Osman* court took note of the Supreme Court of the United States' determination that "'[t]he word "abiding" here has the signification of settled and fixed, a conviction which may follow a careful examination and comparison of the whole evidence.'" 192 Wn. App. at 374 (internal quotation marks omitted) (quoting *Victor v. Nebraska*, 511 U.S. 1, 15, 114 S. Ct. 1239, 127 L. Ed. 2d 583 (1994)). As a result, the term "abiding belief" encouraged jurors "'to reach a subjective state of near certitude of the guilt of the accused.'" 192 Wn. App. at 375 (quoting *Victor*, 511 U.S. at 14-15). Accordingly, the *Osman* court held that defense counsel did not improperly quantify the State's burden of proof by arguing that an abiding belief of guilt meant that the jurors would not look back on their decision after leaving the courthouse and wonder if they made a mistake. 192 Wn. App. at 375.

Here, the prosecutor argued in closing that "[b]eyond a reasonable doubt is described . . . . It's when you have an abiding belief in the charges, that's it." 4 VRP at 430. The prosecutor continued: "So when you are analyzing arguments the defense made, you got to ask yourself, does it affect my abiding belief that this happened?" 4 VRP at 430.

Duenas claims that the prosecutor's statement minimized the State's burden of proof because it suggested that "beyond a reasonable doubt" was a trivial standard. Looking at the argument as a whole, the prosecutor did not argue that an abiding belief was a fleeting or short-lived belief. Instead, the prosecutor argued that the jury must have an abiding belief in the charges to convict Duenas. Accordingly, the prosecutor did not minimize the State's burden of proof, and his statement was proper. Duenas's claim lacks merit.

37

B.      *Misrepresenting the Role of the Jury*

Duenas also claims that the prosecutor committed misconduct by misrepresenting the role

of the jury in suggesting that the jury could acquit Duenas only if they determined H.A. and K.L.

had a motive to lie.  This claim lacks merit.

It is misconduct for a prosecutor to argue that the jury must find that the State's witnesses

are either lying or confused in order to acquit a defendant.  *In re the Pers. Restraint of*

*Glassmann*, 175 Wn.2d 696, 723, 286 P.3d 673 (2012) (Wiggins, J., dissenting) (citing *State v.*

*Fleming*, 83 Wn. App. 209, 214, 921 P.2d 1076 (1996)).  Misstating the basis on which a jury

can acquit the defendant shifts the requirement that the jury find the defendant guilty beyond a

reasonable doubt.  *See* 175 Wn.2d at 723 (Wiggins, J., dissenting).

In closing argument, the prosecutor stated:

> The question for you is, do I have an abiding belief that this happened?  So what
> you have to ask yourself is, you're back there and you're deliberating and let's say
> a juror brings up, well, you know, [H.A.] couldn't remember the exact date of the
> first incident. . . .
>       But when somebody brings that point up, here's what you ask yourself.
> Okay, so she couldn't remember the date.  But when I listened to her testify, when
> I saw her demeanor, when I saw that other witnesses corroborated what she said,
> and when I analyzed and I applied my common sense, I said what possible motive
> would this kid have to come through all this if they weren't telling the truth?  And
> when you looked at her testifying and you had an abiding belief in her testimony,
> does the fact that she can't remember that date shake that?

4 VRP at 431-32.  Duenas did not object.

Duenas argues that the prosecutor's comments are similar to the comments the prosecutor

made in *Fleming*, 83 Wn. App. 209.  In *Fleming*, the prosecutor argued that in order to acquit the

defendant, the jury would have to determine that either the complaining witness lied or was

confused.  83 Wn. App. at 213.  Here, the prosecutor did no such thing.  Instead, the prosecutor

asked the jury to decide if they had an abiding belief in H.A.'s account of sexual abuse. Merely

asking questions of the jury does not rise to the level of misrepresenting the role of the jury.

*State v. Lewis*, 156 Wn. App. 230, 241, 233 P.3d 891 (2010). Accordingly, the prosecutor did

not misrepresent the role of the jury, and his statement was proper. Thus, Duenas's claim lacks

merit.

## CONCLUSION

We hold that the trial court imposed a sentence exceeding the statutory maximum and

abused its discretion in ordering Duenas to submit to plethysmograph testing. But we reject

Duenas's remaining arguments. Accordingly, we affirm Duenas's convictions, but we remand for

the trial court to amend the community custody term and to strike the plethysmograph testing

community custody condition.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

                                                 Worswick, J.

We concur:

Bjorge, C.J.

Lee, J.

39